2006 UT 27

**WEST JORDAN CITY, Plaintiff and Appellee,**

v.

**Christopher GOODMAN, Defendant and Appellant.**

No. 20040944.

Supreme Court of Utah.

April 28, 2006.

Roger F. Cutler, Ryan B. Carter, West Jordan, for plaintiff.

Michael N. Martinez, Salt Lake City, and Sarah Lynn Mathews, West Valley City, for defendant.

Kent R. Hart, Salt Lake City, for amicus Utah Association of Criminal Defense Lawyers.

PARRISH, Justice:

## INTRODUCTION

¶1 After the West Jordan Justice Court convicted Christopher Goodman of two misdemeanor charges, Goodman exercised his statutory right to a trial de novo in the district court.[1] There, Goodman raised a constitutional challenge to the statutory scheme authorizing municipal justice courts,[2] arguing that it violates the separation of powers principles of the Utah Constitution.[3] Goodman also argued that municipal court judges are biased and have an impermissible conflict of interest because they are employed and controlled by the municipalities

---

1. Utah Code Ann. § 78–5–120 (2002).

2. *Id.* §§ 78–5–101 to –140.

3. Utah Const. art. V, § 1.

that benefit from the fines they levy. The district court rejected both challenges and convicted Goodman on both charges. Goodman now appeals. While Goodman's arguments are not without superficial appeal, his briefing on the constitutional claim is inadequate, and our review of the record reveals that he failed to offer any probative evidence in support of his conflict of interest claim. We accordingly affirm the convictions entered by the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On December 12, 2002, West Jordan police officer Holly Curtis was "running license plates" on "all cars" in the Jordan Landing Wal–Mart parking lot. This process involves inputting a vehicle's license plate number into a computer database that returns pertinent information about the vehicle (e.g., insurance status, warrants of arrest issued for the registered driver, etc.). Goodman's vehicle was parked in this lot. Curtis ran its license plate number and discovered that it was uninsured. When Goodman left the parking lot and entered a public street, Curtis issued him a citation for operating a vehicle without insurance in violation of Utah Code section 41–12a–302,[4] a class B misdemeanor.

¶3 The citation required that Goodman appear before the West Jordan Justice Court, but he failed to do so. Accordingly, the justice court issued a bench warrant for Goodman's arrest and added a class B misdemeanor charge pursuant to Utah Code section 77–7–22[5] for failure to appear. At a bench trial, Justice Court Judge Ronald Kunz found Goodman guilty on both charges and sentenced him to sixty days in jail, suspended upon payment of a fine totaling $1,170 plus interest.

¶4 Goodman appealed his justice court conviction to the Third District Court, where he was entitled to a trial de novo pursuant to Utah Code section 78–5–120.[6] At trial, Goodman verbally moved to dismiss the

charges against him, arguing that the municipal justice court scheme violated the constitutional requirement of separation of powers and that the justice court judge had a pervasive conflict of interest stemming from the alleged power of the city over the justice court.

¶5 The district court deferred ruling, requested written briefing on both issues, and scheduled them for further argument. Following argument, the district court denied Goodman's motion to dismiss and found him guilty on both charges. The district court subsequently articulated the basis for its ruling in a carefully reasoned memorandum decision and order. Applying the three-part test we articulated in *In re Young*[7] for evaluating constitutional challenges arising from the separation of powers doctrine, the district court rejected Goodman's constitutional claim.

¶6 The district court also rejected Goodman's claim that the justice court system constituted a de facto violation of the separation of powers doctrine. It held that Goodman had failed to adduce sufficient evidence to establish that justice court judges have an inherent conflict of interest in every case or that they are biased because of the structural relationships between justice courts and the municipalities that create them.

¶7 Goodman appealed. After the briefing was complete, West Jordan moved to dismiss the appeal due to a lack of subject matter jurisdiction and moved to strike Goodman's briefs or, in the alternative, to strike those portions of the briefs referring to factual matters that were not admitted as evidence in the district court. West Jordan's motion to strike was supported by an affidavit from Paul Barron, a member of the Information Technology Department for the Administrative Office of State Courts, in which Barron testified that the statistical information referenced in Goodman's briefs was inaccurate as a result of a software program glitch.

¶8 Goodman opposed both motions and moved to disqualify the Chief Justice from

4. Utah Code Ann. § 41–12a–302 (1998).

5. Utah Code Ann. § 77–7–22 (2003).

6. Utah Code Ann. § 78–5–120 (2002).

7. 1999 UT 6, ¶ 8, 976 P.2d 581.

sitting on this appeal. Goodman argued that, as the presiding officer of the Utah Judicial Council, the Chief Justice has supervisory authority over the Administrative Office of State Courts and all of its employees, including Barron. Goodman reasoned that West Jordan's submission of the Barron Affidavit requires the disqualification of the Chief Justice because of an actual, as well as a perceived, conflict of interest. We deferred resolution of West Jordan's motions and indicated our intent to resolve them concurrently with Goodman's appeal.

## ANALYSIS

¶ 9 A constitutional challenge to a statute presents a question of law, which we review for correctness.[8] When considering such a challenge, we presume that the statute is valid and "resolve any reasonable doubts in favor of constitutionality."[9] When reviewing factual questions, we uphold the trial court's findings unless they are "clearly erroneous."[10]

¶ 10 Before turning to the merits of this appeal, we first determine whether we have subject matter jurisdiction to hear it. We then address Goodman's motion to disqualify the Chief Justice. Concluding that neither of these questions poses an obstacle to our deciding the case, we turn to Goodman's substantive claims and reject them because they are inadequately briefed and lack factual support.

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION TO HEAR AN APPEAL CONCERNING THE CONSTITUTIONALITY OF JUSTICE COURTS

¶ 11 Our authority to determine the substantive issues presented in this appeal is contingent on whether we have subject matter jurisdiction.[11] We therefore begin by addressing West Jordan's argument that neither the district court nor this court has subject matter jurisdiction over Goodman's constitutional challenge to the justice court scheme.

¶ 12 In examining this issue, we start with the basic premise that "[a] court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court derives its authority."[12] The Utah Constitution gives district courts "appellate jurisdiction as provided by statute,"[13] and the legislature has enacted a statute giving the district courts jurisdiction over appeals from justice court convictions.[14] Under this statute, a criminal defendant who has been convicted by a justice court is entitled to a trial de novo in the district court.[15] As a part of this de novo review, a defendant is permitted to raise in the district court any relevant defense to the charges, including challenges to the constitutionality of the statutes or ordinances under which he was convicted.[16]

¶ 13 Had Goodman lodged a direct challenge to the constitutionality of the statutes under which he was convicted, the jurisdiction of the district court, and hence this court, would be beyond dispute. But Goodman does not challenge the constitutionality of the particular statutes under which he was convicted. Rather, he challenges the validity of the convicting justice court. West Jordan argues that the constitutional validity of the justice court conviction was relevant to nei-

---

8. *Provo City Corp. v. Thompson,* 2004 UT 14, ¶ 5, 86 P.3d 735.

9. *State v. Lopes,* 1999 UT 24, ¶ 6, 980 P.2d 191.

10. *Jeffs v. Stubbs,* 970 P.2d 1234, 1244 (Utah 1998).

11. *See* Restatement (Second) of Judgments § 11 (1982) ("A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action.").

12. *Myers v. State,* 2004 UT 31, ¶ 16, 94 P.3d 211 (internal quotation marks omitted); *see also* 21 Am.Jur.2d *Criminal Law* § 500 (1994).

13. Utah Const. art. VIII, § 5; *see also State v. Taylor,* 664 P.2d 439, 441 (Utah 1983).

14. Utah Code Ann. § 78–5–120(1) (2002).

15. *Id.*

16. *Id.; State v. Hinson,* 966 P.2d 273, 275 n. 2 (Utah Ct.App.1998).

ther the de novo trial in the district court nor the operative question of whether the prosecution established the elements necessary to convict Goodman in the district court. West Jordan further argues that Goodman's attempt to challenge the justice court scheme in the context of the appeal of his convictions deprived West Jordan of due process. We find neither argument persuasive.

¶ 14 We recognize the importance of claims involving the constitutionality of statutes or ordinances and the necessity of a forum for raising them.[17] We accordingly construe any restriction on jurisdiction narrowly.[18] When "[t]here is no provision of the Constitution excepting [particular types of cases], nor ... any law of the state prohibiting jurisdiction of the district court over the subject-matter," we presume that the district court has jurisdiction.[19]

¶ 15 West Jordan has failed to identify either a constitutional provision or a statute limiting the district court's jurisdiction over constitutional challenges to the validity of a justice court conviction. Indeed, applicable statutes implicitly contemplate such jurisdiction. Utah Code section 78–5–120(7), which governs the jurisdiction of Utah appellate courts over appeals from a district court's review of a justice court conviction, specifically provides that Utah appellate courts may entertain appeals from district court review of justice court proceedings if "the district court rules on the constitutionality of a statute or ordinance."[20] This provi-

sion suggests that district courts have statutory authority to hear appeals from justice courts that challenge the constitutionality of statutes. And it does not limit such constitutional challenges to those statutes or ordinances defining the express elements of the crime or violation under which a defendant was charged.[21]

¶ 16 There are both express and implied elements of any conviction.[22] An implied element of Goodman's convictions is the underlying validity of the convicting court. If the convicting court is constitutionally infirm, then the conviction is necessarily invalid.[23] This conclusion is particularly compelling in this case because one of the charges on which Goodman was convicted in the district court was his failure to appear before the West Jordan Justice Court. One of the indisputable elements of a failure to appear charge is the implied, if not express, notion that the court that required the defendant's appearance was constitutionally legitimate.

¶ 17 Although we have not explicitly addressed the scope of appellate court jurisdiction over cases originating in the justice courts, we have consistently heard cases challenging various constitutional aspects of the justice court system.[24] By repeatedly hearing these cases, we have implicitly acknowledged our subject matter jurisdiction over them and have recognized that the questions they raise about the constitutionality of a convicting court are inherently related to a defendant's conviction.[25]

---

17. *State v. Norris*, 2004 UT App 267, ¶ 7 n. 3, 97 P.3d 732, *cert. granted*, 106 P.3d 743 (Utah Dec. 22, 2004).

18. *Taylor*, 664 P.2d at 441.

19. *Jardine v. Harris*, 63 Utah 560, 227 P. 1029, 1030 (1924).

20. Utah Code Ann. § 78–5–120(7) (2002).

21. *See id.*

22. *See, e.g., State v. Colonna*, 766 P.2d 1062, 1065 (Utah 1988); *State v. Elton*, 680 P.2d 727, 729 (Utah 1984); *State v. Gabert*, 152 Vt. 83, 564 A.2d 1356, 1359 (1989); *State v. Robbins*, 138 Wash.2d 486, 980 P.2d 725, 730 (1999); *Joyner v. State*, 2002 WY 174, ¶ 14, 58 P.3d 331.

23. *See* Utah Const. art. I, § 12.

24. *See, e.g., Bernat v. Allphin*, 2005 UT 1, 106 P.3d 707 (involving defendants who challenged the constitutionality of Utah's two-tiered justice court system on appeal after being convicted of several crimes in the justice court); *Shelmidine v. Jones*, 550 P.2d 207, 209–11 (Utah 1976) (involving defendants who, having been convicted by a justice court of drunk driving, challenged the constitutionality of having nonlawyers as justice court judges); *Dillard v. Dist. Court*, 69 Utah 10, 251 P. 1070 (1926) (reviewing the constitutionality of a law limiting the jurisdiction of justice courts).

25. *See Bernat*, 2005 UT 1, ¶¶ 10–42, 106 P.3d 707; *Shelmidine*, 550 P.2d at 209–11.

¶ 18 Goodman has a constitutional right to appeal his convictions. If that right is to have any meaning, it must include the right to challenge the validity of the convicting court.[26] As a result, we conclude that we have subject matter jurisdiction over Goodman's challenges to the constitutionality of the justice court scheme.

¶ 19 West Jordan also argues that it was denied due process because it did not have notice that Goodman would be challenging the constitutionality of the justice court scheme in the context of his trial de novo in the district court. We are not persuaded. Because the constitutionality of a convicting court is an implicit element of any conviction (and particularly of Goodman's conviction for failure to appear), Goodman was entitled to challenge the constitutional validity of the justice court in his de novo trial before the district court. West Jordan should have reasonably anticipated such a defense. Moreover, West Jordan's claim that it was deprived of due process rings hollow in the face of the fact that the district court allowed the parties the opportunity to fully brief and orally argue the issues relating to the validity of the justice court scheme once Goodman raised it orally.[27] Under these circumstances, and in light of the heavy emphasis that we place on protecting a defendant's right to raise constitutional claims, we hold that West Jordan has been accorded due process and that we have subject matter jurisdiction.[28]

## II. GOODMAN'S MOTION TO DISQUALIFY THE CHIEF JUSTICE IS WITHOUT MERIT

¶ 20 We next turn to Goodman's motion to disqualify the Chief Justice. The factual predicate for Goodman's motion is the Chief Justice's role as the presiding officer of the Judicial Council, pursuant to which she has general supervisory power over all court administrative staff. Paul Barron, a computer specialist who is part of the Judicial Council's administrative staff, filed an affidavit in support of West Jordan's motion to strike Goodman's briefs. Goodman argues that Barron's affidavit calls into question the impartiality of the court because of the "appearance of impropriety of the employee in involving himself in a case before his employer." We disagree.

¶ 21 As a general rule, a judge has a duty to preserve "the integrity and independence of the judiciary"[29] and should disqualify herself "in a proceeding in which the judge's impartiality might reasonably be questioned."[30] The word "reasonable" connotes the idea that judges are not subject to disqualification in *every* situation where their impartiality is questioned, particularly when the potential for bias is remote.[31] Indeed, the Judicial Canons specifically recognize that a judge may have a "de minimis" interest, or in other words, "an insignificant interest that could not raise reasonable question as to a judge's impartiality."[32]

¶ 22 Scholars discussing this principle have described it as the "reasonable person" test.[33] This test "look[s] to see whether a

26. *See* Utah Const. art. I, § 12 (indicating that an accused shall have "the right to appeal in all cases"); Utah Const. art. VIII, § 5 ("Except for matters filed originally with the Supreme Court, there shall be in all cases an appeal of right from the court of original jurisdiction to a court with appellate jurisdiction over the cause.").

27. *See Turner v. Nelson*, 872 P.2d 1021, 1024 (Utah 1994); *Astill v. Clark*, 956 P.2d 1081, 1085–86 (Utah Ct.App.1998).

28. *See Low v. City of Monticello*, 2004 UT 90, ¶ 15, 103 P.3d 130 (indicating that due process is a flexible standard that tries to ensure fairness).

29. Utah Code of Judicial Conduct Canon 1 (2005).

30. Utah Code of Judicial Conduct Canon 3 (2005).

31. Utah Code of Judicial Conduct Canon 3E (indicating that judges should disqualify themselves "in a proceeding in which the judge's impartiality might *reasonably* be questioned" or where the judge has "*more* than a de minimis interest that could be substantially affected by the proceeding." (emphasis added)).

32. Utah Code of Judicial Conduct Terminology (2005).

33. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3549 (2d ed. 1984 & Supp.2005).

reasonable person, knowing all the circumstances, would believe that the judge's impartiality could be questioned."[34] We have adopted a similar approach. For example, in *Madsen v. Prudential Federal Savings & Loan Ass'n*,[35] we held that even though a judge was a potential member of an alleged class in a class action suit, he was not disqualified from hearing the case because the potential for bias was "too remote and insubstantial."[36]

¶ 23 In this case, any possibility for bias is too speculative and remote to require disqualification. The Chief Justice's broad and general supervisory power over all administrative court staff statewide is insufficient to disqualify her from hearing a case in which one of hundreds of court employees has submitted an affidavit. No reasonable person would expect the Chief Justice to be biased under these circumstances, especially given the lack of any evidence that the Chief Justice has ever exercised any direct administrative oversight over the employee submitting the affidavit.

¶ 24 As a matter of necessity,[37] this court has an obligation not only to promulgate court rules, but also to review their constitutional validity and to supervise lower courts.[38] Requiring the disqualification of the Chief Justice, and possibly other justices, whenever an administrative court employee is remotely involved in a case would result in our abdicating our responsibility to supervise

lower courts and determine the validity of court rules.[39] We therefore deny Goodman's motion to disqualify the Chief Justice.

## III. GOODMAN HAS FAILED TO OVERCOME THE PRESUMPTION FAVORING THE CONSTITUTIONALITY OF THE JUSTICE COURT SCHEME

¶ 25 We now consider Goodman's substantive claims. First, Goodman asserts that the statutory structure of justice courts violates the separation of powers principles of the Utah Constitution. Second, he asserts that justice court judges have an inherent conflict of interest preventing them from exercising independent judgment because they are employed and controlled by the municipalities that benefit from the fines they levy.

¶ 26 We have articulated a three-part test for analyzing whether a law violates separation of powers principles. It asks:

First, are the [actors] in question "charged with the exercise of powers properly belonging to" one of the three branches of government? Second, is the function that the statute has given the [actors] one "appertaining to" another branch of government? The third and final step in the analysis asks: if the answer to both of the above questions is "yes," does the constitution "expressly" direct or permit exercise of the otherwise forbidden function? If not, article V, section 1 is transgressed.[40]

34. *Id.*

35. 767 P.2d 538, 549 (Utah 1988).

36. *Id.* (citation omitted); *see also V–1 Oil Co. v. Dep't of Envtl. Quality,* 939 P.2d 1192, 1193 (Utah 1997) (holding that it did not violate due process for a staff attorney to serve as an administrative adjudicator for the same agency whose disputes he was to adjudicate because the staff attorney was "structurally segregated from the branch of the division conducting investigations and prosecutions"); *In re Va. Elec. & Power Co.,* 539 F.2d 357, 368 (4th Cir.1976) (holding that a trial judge's interest in a possible rebate on utility payments was a de minimis interest).

37. *See* 46 Am.Jur.2d *Judges* § 91 (1994) ("The majority view is that the rule of disqualification of judges must yield to the demands of necessity.").

38. *See City of Kanab v. Guskey,* 965 P.2d 1065, 1068–69 (Utah Ct.App.1998) (reviewing the con-

stitutionality of rule 26 of the Utah Rules of Criminal Procedure); *City of Monticello v. Christensen,* 788 P.2d 513, 519 (Utah 1990) (Durham, J., dissenting) (indicating that this court is both the ultimate source of content for the meaning of constitutional language and the promulgating agency for rule 26(13)(a)); *see also* Utah Const. art. VIII, § 4 ("The Supreme Court shall adopt rules of procedure and evidence to be used in the courts of the state and shall by rule manage the appellate process.").

39. *See In re Anderson,* 2003 UT 35, ¶ 14, 81 P.3d 758 (refusing to apply a bright-line rule of disqualification in reviewing findings of the Judicial Conduct Commission).

40. *Jones v. Utah Bd. of Pardons & Parole,* 2004 UT 53, ¶ 23, 94 P.3d 283 (alteration in original) (quoting *In re Young,* 1999 UT 6, ¶ 8, 976 P.2d 581).

¶ 27 The district court examined the statutory scheme pursuant to which the West Jordan Justice Court was created and concluded that Goodman failed to meet the requirements of the first prong because the West Jordan City manager is not charged with the exercise of powers properly belonging to the judicial branch of government. Having determined that Goodman had failed to meet the first prong, the district court found it unnecessary to address the other two prongs and held that the West Jordan justice court scheme did not violate constitutional separation of powers principles.

¶ 28 The district court similarly rejected Goodman's claim that the West Jordan municipal court judge had a conflict of interest in every case, finding that the claim lacked evidentiary support. The scant evidence that Goodman offered in support of his claim consisted of a West Jordan City organizational chart, city budget estimates, and justice court conviction rate statistics. After examining each piece of evidence, the district court concluded that none of it supports anything other than "mere speculation" regarding Goodman's claim that West Jordan's justice court is so dominated by the city that Judge Kunz cannot act independently and impartially on the cases before him.

¶ 29 We affirm the district court's ruling on Goodman's separation of powers claim because Goodman has failed to brief it adequately. This court "is not 'a depository in which the appealing party may dump the burden of argument and research.' " [41] An adequately briefed argument must provide "meaningful legal analysis." [42] A brief must go beyond providing conclusory statements and "fully identify, analyze, and cite its legal arguments." [43] This analysis "requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." [44]

¶ 30 Goodman's briefing fails to meet these requirements. As previously indicated, we have articulated a three-part test for evaluating claims that a statute violates separation of powers principles of the Utah Constitution.[45] The district court prepared a thoughtful and detailed opinion addressing Goodman's claims, the centerpiece of which was an analysis of Goodman's constitutional claim under the controlling three-part test. But Goodman's brief on appeal acknowledges neither the controlling test nor the district court's discussion of that test. Nor does Goodman make any attempt to explain why the test does not apply here. In short, Goodman fails to explain why or how he believes the district court erred. These deficiencies in Goodman's briefing, coupled with the presumption that statutes passed by the legislature are constitutional,[46] require that we affirm the ruling of the district court on Goodman's separation of powers claim.

¶ 31 We also affirm the district court's ruling rejecting Goodman's claim that Judge Kunz has a conflict of interest in every case because Goodman failed to establish the factual predicate for this claim. Goodman offered only three pieces of evidence to the district court. As the district court found, however, none of this evidence established an actual conflict of interest. Goodman attempted to remedy this deficiency on appeal by attaching to his appellate brief additional "evidence," including memoranda relating to the Salt Lake City Justice Court, unauthenticated statistics regarding justice court conviction rates, and an unauthenticated document reflecting municipal court organization. But we may not properly consider evidence that was not presented to the district court.

¶ 32 Rule 24(a)(7) of the Utah Rules of Appellate Procedure requires that "[a]ll statements of fact and references to the proceedings below . . . be supported by citations

**41.** *State v. Jaeger*, 1999 UT 1, ¶ 31, 973 P.2d 404 (quoting *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988)).

**42.** *State v. Gamblin*, 2000 UT 44, ¶ 7, 1 P.3d 1108.

**43.** *State v. Green*, 2005 UT 9, ¶ 11, 108 P.3d 710.

**44.** *Jaeger*, 1999 UT 1, ¶ 31, 973 P.2d 404 (internal quotation marks omitted).

**45.** *Jones*, 2004 UT 53, ¶ 23, 94 P.3d 283 (citing *In re Young*, 1999 UT 6, ¶ 8, 976 P.2d 581).

**46.** *Broadbent v. Gibson*, 105 Utah 53, 140 P.2d 939, 943 (1943).

to the record." Rule 24(a)(9) further indicates that "[t]he argument shall contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court." The combined effect of these rules is to require that parties on appeal make well-reasoned legal arguments supported by specific facts of record.

¶ 33 Goodman disagrees, arguing that rule 24 does not preclude reliance on extra-record facts, but only requires citation to those facts that happen to be supported by the record. This is incorrect. "As a general matter, 'this court need not, and will not[,] consider *any* facts not properly cited to, or supported by, the record.' " [47]

¶ 34 Arguably, citations to the record need not be perfect so long as the court is "nevertheless able to adequately navigate the record with the citations provided." [48] But Goodman's failure to cite to the record presumably stems, in large part, from the fact that much of the evidence on which he relies is not present in the record at all or is too speculative to merit serious consideration.

¶ 35 As a side note, we acknowledge that the amicus curiae brief, filed by the Utah Association of Criminal Defense Lawyers in support of Goodman's claims, makes a valiant effort to salvage Goodman's appeal. But an amicus brief filed on appeal cannot remedy Goodman's fundamental problem—that he failed to offer in the district court the evidence necessary to support his claim. [49]

¶ 36 In affirming Goodman's convictions, we are not foreclosing future challenges to the validity of the justice court scheme, and in fact, we encourage the legislature to give serious consideration to some of the arguments raised in the amicus brief. It is theo-

retically possible that a justice court judge may be unable to exercise his judicial functions with the necessary impartiality because of pressure to generate revenue for his municipal employer or that a municipal government may exercise such control over its justice court that it violates fundamental principles of separation of powers. [50] But to prevail on such claims, a defendant would need to support them with specific evidence [51] and cogent legal argument. Here, because of the completely deficient briefing and lack of evidence, we must affirm Goodman's convictions.

## CONCLUSION

¶ 37 We have subject matter jurisdiction to determine the constitutional claims in this case and deny Goodman's motion to disqualify the Chief Justice. We reject Goodman's constitutional challenge to the justice court scheme because he has failed to provide sufficient argument to rebut the well-established presumption that statutes enacted by the legislature are constitutional. Due to a lack of supporting record evidence, we similarly reject Goodman's claim that Judge Kunz had an impermissible conflict of interest. Affirmed.

¶ 38 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

**47.** *Carrier v. Salt Lake County*, 2004 UT 98, ¶ 21, 104 P.3d 1208 (emphasis added) (quoting *Uckerman v. Lincoln Nat'l Life Ins. Co.*, 588 P.2d 142, 144 (Utah 1978)).

**48.** *Id.*

**49.** *Lehi Irrigation Co. v. Jones*, 115 Utah 136, 202 P.2d 892, 896 (1949) ("While we are appreciative of the efforts of amicus curiae in presenting this problem, we are reluctant to decide so important a problem, ... without having the benefit of

proceedings, arguments, and parties who may be adversely affected, to aid us in this determination.")

**50.** *See generally* Herbert B. Chermside, Jr., Annotation, *Disqualification of Judge, Justice of the Peace, or Similar Judicial Officer for Pecuniary Interest in Fines, Forfeitures, or Fees Payable by Litigants*, 72 A.L.R.3d 375 (Update 2002).

**51.** *See Carrier*, 2004 UT 98, ¶ 21, 104 P.3d 1208.