2014 UT App 92

STATE of Utah, Plaintiff and Appellee,

v.

Malik Eagle BENSON, Defendant and Appellant.

No. 20120360–CA.

Court of Appeals of Utah.

April 24, 2014.

Richard G. Uday, for Appellant.

Sean D. Reyes and Jeffrey S. Gray, for Appellee.

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

Opinion

VOROS, Judge:

¶ 1 Defendant Malik Eagle Benson was charged with committing four armed robber-

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

ies in downtown Salt Lake City in less than twenty-four hours. After his arrest, Benson confessed to the first robbery, which included the theft of a car. That car served as the getaway vehicle in at least one of the other robberies, and police apprehended Benson after seeing him driving it. Benson unsuccessfully moved to sever charges relating to the first robbery from charges relating to the other three. His principal contention on appeal asserts that the trial court abused its discretion in denying his motion to sever. We hold that it did not.

## BACKGROUND

¶ 2 A spate of similar robberies took place in Salt Lake City on February 18 and 19, 2011. At 1:30 p.m. on February 18, a parking lot scuffle between two men spilled into a taqueria. One of the men demanded the other's money and car keys, then brandished a gun, ordered a waitress and the patrons to "give him the cash," and took one patron's wallet. The robber left in the stolen car, a blue Nissan.

¶ 3 Shortly after 7:00 p.m., an armed man robbed two people outside a local restaurant, then went inside and demanded money at the register. Half an hour later, an armed man held up a gas station four miles away and left in a blue Nissan Sentra. And the next morning, an armed man walked into the back office of a Burger King, confronted the manager, and told her to open the restaurant's tills. The man left the Burger King in a blue Nissan with the same plate numbers as the car stolen from the taqueria the day before.

¶ 4 Later that day, Officer Michael Coles spotted the stolen blue Nissan and made eye contact with the driver. The officer chased the blue Nissan into a hotel parking lot, where the driver left the car and ran into the hotel. A SWAT team evacuated the hotel guests and eventually flushed out and arrested Malik Eagle Benson, who had barricaded himself in a room. Officer Coles later identified Benson as the man driving the blue Nissan.

¶ 5 Benson was charged with eight counts of aggravated robbery using a dangerous weapon, one count of obstructing justice, and one count of failing to respond to an officer's signal to stop. Benson moved to sever the first three aggravated-robbery counts, which were based on the taqueria robbery, from the remaining five counts. Benson argued that the taqueria-robbery counts were "neither based on the same conduct nor otherwise connected together in their commission" to the other counts, that the two sets of aggravated-robbery counts did not "cumulatively comprise a common scheme or plan," and that the "probative value of any evidence related to the [other robberies] would be significantly outweighed by its prejudicial effect" with respect to the taqueria-robbery counts. The trial court denied Benson's motion to sever.

¶ 6 A jury convicted Benson of two of the three taqueria-robbery counts, one count each for the gas station and Burger King robberies, and the counts for obstructing justice and failing to respond. It acquitted Benson of the third taqueria-robbery count and of all three counts based on the robbery of the local restaurant. The court sentenced Benson to five years to life for each of the aggravated-robbery counts and ordered that those sentences run consecutively. The court also sentenced Benson to one to fifteen years for obstructing justice and zero to five years for failing to respond and ordered that those sentences run concurrently with the aggravated-robbery sentences. Benson appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Benson contends that the trial court erred by denying his motion to sever the taqueria-robbery charges from the remaining charges. Granting or denying a severance motion "is a discretionary function of the trial judge, who must weigh prejudice to the defendant caused by joinder against considerations of economy and expedition in judicial administration." *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977). Accordingly, we grant a trial court that denies a severance motion "considerable latitude" and reverse only if the trial court's refusal to sever amounts to "a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial." *Id.*; *see also State v. Collins*, 612 P.2d 775, 777 (Utah 1980);

*State v. Balfour,* 2008 UT App 410, ¶ 10, 198 P.3d 471.

¶ 8 Benson also contends that one of the jury instructions was unconstitutional, "violating his presumption of innocence and impermissibly shifting the burden of proof." Generally, we review a trial court's ruling on a jury instruction for correctness. *State v. Maestas,* 2012 UT 46, ¶ 148, 299 P.3d 892. But when a party does not object to an instruction at trial, we review the trial court's ruling "under the manifest injustice or plain error standard." *State v. Powell,* 2007 UT 9, ¶ 11, 154 P.3d 788. Moreover, when "counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction," we will not review the trial court's ruling, even under the manifest injustice exception. *State v. Hamilton,* 2003 UT 22, ¶ 54, 70 P.3d 111.

## ANALYSIS

### I. Benson's Motion to Sever

¶ 9 Benson contends that the trial court erred by denying his motion to sever the three counts related to the robbery at the taqueria from the five counts related to the remaining three robberies. In reviewing a ruling on a motion to sever, we will "reverse [a denial] only if the trial judge's refusal to sever charges is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial. Under [the abuse of discretion] standard, we will not reverse . . . unless the decision exceeds the limits of reasonability." *Balfour,* 2008 UT App 410, ¶ 10, 198 P.3d 471 (alterations in original) (citations and internal quotation marks omitted).

¶ 10 Section 77–8a–1 of the Utah Code governs severance and joinder. That section specifies that two or more felonies may be tried together on two conditions. First, the charged offenses must be sufficiently connected. This connection exists if the charged offenses are (1) "based on the same conduct," (2) "otherwise connected together in their commission," or (3) "alleged to have been part of a common scheme or plan." *See* Utah Code Ann. § 77–8a–1(1) (LexisNexis 2008). Second, the court must not have found that the defendant or the prosecution would be prejudiced by a joinder. *Id.* § 77–8a–1(4)(a).[2]

### A. Connected Offenses

¶ 11 We first consider whether the charged offenses were connected. The parties agree that the counts related to the taqueria robbery are not based on the "same conduct" as the remaining counts. But we readily conclude that all four crimes are "otherwise connected together in their commission." *Id.* § 77–8a–1(1).[3]

¶ 12 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Retirement Bd.,* 2007 UT 16, ¶ 8, 157 P.3d 797 (citation and internal quotation marks omitted). The plain language of the statute requires only that the charges be "otherwise connected together in their commission." Utah Code Ann. § 77–8a–1(1).

¶ 13 We have held that crimes are "otherwise connected together in their commission" where a later crime is "precipitated by" an earlier one, such as where the later crime facilitates flight after the earlier one. *See State v. Scales,* 946 P.2d 377, 385 (Utah Ct.App.1997) (citation and internal quotation

---

2. The Single Criminal Episode Statute is not relevant here. *See* Utah Code Ann. §§ 76–1–401 to –403 (LexisNexis 2008). That statute *prohibits* separate trials for "separate offenses" arising "under a single criminal episode." *Id.* § 76–1–402(2). Benson claims he was *entitled* to separate trials. Moreover, section 76–1–401 states, "Nothing in this part shall be construed to limit or modify the effect of Section 77–8a–1 in controlling the joinder of offenses and defendants in criminal proceedings."

3. The trial court ruled that they were part of a common scheme or plan. *See* Utah Code Ann. § 77–8a–1(1)(b). Because offenses that are part of a common scheme or plan are necessarily "connected together in their commission" and the evidence more readily supports the latter, more general ground, we affirm on that alternative ground. *See Bailey v. Bayles,* 2002 UT 58, ¶ 10, 52 P.3d 1158 ("'[A]n appellate court may affirm the judgment appealed from . . . on any legal ground or theory apparent on the record.'" (citation and internal quotation marks omitted)).

marks omitted). For example, in *Scales*, the defendant borrowed a gun from his brother-in-law, killed his wife with the gun, then fled in a car belonging to his wife's grandmother. *Id.* at 379–80. The trial court denied the defendant's motion to sever his murder count from his theft counts. *Id.* at 380–81. This court upheld that ruling, concluding that "the conduct resulting in the theft charges was precipitated by defendant's conduct resulting in the murder charge, and consequently the theft and murder charges were sufficiently 'connected together in their commission' to allow the trial court to order a single trial of the different offenses." *Id.* at 385 (quoting Utah Code Ann. § 77–8a–1(1)(a) (Michie 1995)). But crimes need not be causally related to be connected; the category of connected cases includes, but is not limited to, "precipitation cases" like *Scales. See State v. Smith*, 927 P.2d 649, 653 (Utah Ct. App.1996).

¶ 14 Here, the taqueria robbery and the other robberies were "connected together in their commission." *See* Utah Code Ann. § 77–8a–1(1). Benson committed all the crimes in the course of a single robbery spree within a twenty-four-hour period, using what appeared to be the same weapon and the same getaway car. Indeed, the blue Nissan Sentra runs as a thread through the robberies and Benson's apprehension. Benson stole it in the course of committing the taqueria robbery. He later confessed to this crime. The gas station robber concealed his face but left in a blue Sentra. The Burger King robber also concealed his face but left in a blue Sentra whose license plate matched that of the car stolen at the taqueria. Finally, police apprehended Benson after seeing him driving the Sentra.

¶ 15 This case differs from *Scales* principally in the order of events, not in their degree of connection. There the car theft allowed the perpetrator to drive away from the murder scene. *See Scales*, 946 P.2d at 379–80. Here, the car theft allowed the perpetrator to drive to the scene of each of the subsequent robberies.[4] These crimes were connected together in their commission.

### B. Prejudice by Joinder

■ ¶ 16 We next consider prejudice. As noted above, even offenses otherwise properly joined must be severed if necessary to prevent prejudice to the defendant: if a defendant "is prejudiced by a joinder of offenses ..., the court shall order an election of separate trials of separate counts." Utah Code Ann. § 77–8a–1(4)(a) (LexisNexis 2008). However, "[t]he burden of demonstrating prejudice is a difficult one, and the ruling of the trial [court] will rarely be disturbed on review. The defendant must show something more than the fact that a separate trial might offer him a better chance of acquittal." *Smith*, 927 P.2d at 653–54 (citation and internal quotation marks omitted).

¶ 17 We have held that "an otherwise proper joinder of multiple charges is prejudicial if evidence of the other bad acts would not have been admissible in a separate trial." *State v. Hildreth*, 2010 UT App 209, ¶ 38, 238 P.3d 444. And we ordinarily analyze admissibility under rule 404(b) of the Utah Rules of Evidence. *See, e.g., State v. Balfour*, 2008 UT App 410, ¶ 21, 198 P.3d 471. Here, however, Benson does not claim that the trial court erred in analyzing admissibility under rule 404(b) or rule 403. In fact, he concedes that evidence relating to the taqueria robbery would be admissible in a trial on the other robberies.

■ ¶ 18 Benson argues rather that "trying the counts together created a heightened degree of prejudice to the defendant denying him his right to a fair trial on each separate event" and that "[t]here is an inherent prejudicial impact to the defendant trying all eight robbery counts in one proceeding," which "clearly justifies and even requires the severance of these proceedings." "Otherwise," he argues, "the defendant will be wrongfully stigmatized by the evidence of the multiple charges and will suffer inherent unjust prejudice." Such generalized but unanalyzed assertions of prejudice fall short of demonstrat-

---

4. Whoever robbed the local restaurant had covered his face with a hood and a red bandana but left in a small, dark blue or black car. Without further identification of the robber, the jury acquitted Benson of the charges related to this incident.

ing trial court error; rather, an appellant "must provide meaningful legal analysis." *West Jordan City v. Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874 (citation and internal quotation marks omitted). His brief "must go beyond providing conclusory statements and fully identify, analyze, and cite [his] legal arguments." *Id.* (citation and internal quotation marks omitted).

¶ 19 Furthermore, Benson cites no law supporting his theory that joinder prejudiced him notwithstanding the fact that severance would not have resulted in the exclusion of any evidence. *Cf., e.g., Hildreth*, 2010 UT App 209, ¶ 38, 238 P.3d 444 (stating that in joinder challenges, "we have equated prejudice with whether the evidence would have properly come in anyway under rule 404(b)"); *Balfour*, 2008 UT App 410, ¶ 22 n. 9, 198 P.3d 471 ("The test for joinder of charges ... utilizes an analysis under rule 404(b)....").

¶ 20 Benson does suggest that *State v. Gotfrey* demonstrates how he was prejudiced in the present case. *See* 598 P.2d 1325 (Utah 1979). In *Gotfrey*, the defendant was convicted of raping his stepdaughter in September 1975, sodomizing his stepson in October 1976, and raping a second stepdaughter in March 1977. *Id.* at 1327. Our supreme court "conclude[d] that the separate and different charges of rape upon the step-daughters and of sodomy involving the step-son are not of such similarity in character and circumstances of commission that, considering fairness to the defendant, they should have joined under the [joinder] statute." *Id.* at 1328. The court stressed that "the two charges of rape relate to incidents several months apart and with different victims; and that the charge of sodomy is a separate and distinct offense with different elements." *Id.* *Gotfrey* offers little guidance here. While the robbery victims here were of course different, Benson committed all the robberies within a twenty-four-hour period. And after stealing a car in the first robbery, he used it to commit the others.

¶ 21 Benson also relies on *State v. Balfour*, 2008 UT App 410, 198 P.3d 471. *Balfour* was charged with four counts of forcible sexual abuse and attempted forcible sexual abuse. *Id.* ¶ 2. This court held that the fourth count was improperly joined with the other three. *Id.* ¶ 30. Relying on *Gotfrey*, we noted dissimilarities between the fourth count and the remaining counts. *Id.* We also observed that the fourth count "occurred on September 15, 2003, while the other three counts occurred on January 21, 2005—a full sixteen months later." *Id.* We concluded that the trial court had exceeded its discretion in finding that the fourth count was part of the same common scheme or plan as the other three. *Id.* In short, we reversed not under the prejudice prong of the joinder test, but under the connection prong. Accordingly, *Balfour* does not aid Benson's claim that he was prejudiced by joinder here. Moreover, the temporal proximity of Benson's crimes distinguishes this case from *Balfour*.

¶ 22 In sum, Benson has not shown that the trial court abused its discretion in refusing to sever the taqueria-robbery counts from the remaining counts. The taqueria robbery and the ensuing robberies were connected together in their commission, and Benson has not demonstrated that joinder of the charges prejudiced him. On the contrary, Benson's acquittal on the local restaurant charges indicates that the jury was clearly able to evaluate each of the robberies independently. *See supra* ¶ 15 n. 4.

## II. Jury Instruction

¶ 23 Benson further contends that the trial court erred by giving a jury instruction quoting verbatim the language of Utah Code section 76-6-402(1).[5] He argues that "[t]his instruction as given has been declared unconstitutional by our Supreme Court as violative of the constitutionally protected presumption of innocence and has been successfully challenged as impermissibly shifting the burden of proof from the State to the Defendant."

---

5. That subsection reads as follows:
   The following presumption shall be applicable to this part:
   (1) Possession of property recently stolen, when no satisfactory explanation of such pos-

session is made, shall be deemed prima facie evidence that the person in possession stole the property.
Utah Code Ann. § 76-6-402(1) (LexisNexis 2008).

The State concedes that our supreme court "has held that trial courts should not give a jury instruction that uses this statutory language verbatim." But the State argues that the trial court's error was harmless and that Benson's defense counsel invited any error when she told the court that the jury instruction was supported by caselaw. We agree with the State.

¶ 24 As a general rule, "claims not raised before the trial court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. This preservation rule applies to "every claim, including constitutional questions, unless a litigant demonstrates that 'exceptional circumstances' exist or 'plain error' occurred." *Id.* (citation and internal quotation marks omitted). To preserve an issue for appeal, "[t]rial counsel must state clearly and specifically all grounds for objection." *State v. Larsen,* 865 P.2d 1355, 1363 n. 12 (Utah 1993). The objection must "be specific enough to give the trial court notice of the very error of which counsel complains." *State v. Bryant,* 965 P.2d 539, 546 (Utah Ct.App.1998) (citation and internal quotation marks omitted). And the issue "must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801 (brackets, citation, and internal quotation marks omitted).

¶ 25 Under these standards, Benson did not preserve his present claim of error in the trial court. Jury Instruction 49 paraphrases section 76–6–402(1) of the Utah Code:

> If a person is in possession of property that has recently been stolen, when no satisfactory explanation of such possession is made, that shall be deemed prima facie evidence that the person in possession stole the property.

Benson's attorney did object to the instruction, but in objecting, she represented to the trial court that under relevant caselaw, the instruction did *not* unconstitutionally shift the burden of proof to the defense:

> And this is an objection for the record [to] Instruction 49, which is the instruction about the presumption . . . that if a person is in possession of property that's been recently stolen, that it shall be deemed prima facie evidence. *I know that there's case law that indicates that it is not burden shifting, and therefore constitutionally permissible.* For the record, I would still like to say that I don't agree with those cases that say that, and believe that it still is unconstitutional.

(Emphasis added.) The trial court gave Instruction 49 over her objection, and the prosecutor highlighted the instruction in his closing argument.

¶ 26 We recognize that defense counsel here did not, "either by statement or act, affirmatively represent[ ] to the court that he or she had no objection to the jury instruction." *State v. Hamilton,* 2003 UT 22, ¶ 54, 70 P.3d 111. She did object. But in the course of that objection, she assured the court that the instruction did not suffer from the very infirmity Benson now claims on appeal.

¶ 27 On appeal, Benson asserts that the jury instruction was unconstitutional. But at trial Benson asserted that the instruction was constitutional—albeit under caselaw that defense counsel disagreed with. Benson thus did not alert the trial court to the "very error" he asserts on appeal. That trial counsel disagreed with the caselaw would preserve an appellate challenge to the caselaw, but it would not cause the trial court to refuse the instruction.

¶ 28 If anything, Benson invited the error he now alleges. Although obviously not "a conscious attempt to mislead the trial court," counsel's assurance that the jury instruction had been held constitutional nevertheless "effectively led the trial court into adopting the erroneous jury instruction that he now challenges on appeal." *See State v. Geukgeuzian,* 2004 UT 16, ¶ 12, 86 P.3d 742. "Vertical stare decisis . . . compels a court to follow strictly the decisions rendered by a higher court." *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994). Consequently, assuring the trial court that the instruction had been held constitutional virtually guaranteed that the trial court would *not* refuse to give it.

¶ 29 Like our supreme court, "we are resolute in our refusal to take up constitutional issues which have not been properly preserved, framed and briefed." *Brigham City v. Stuart*, 2005 UT 13, ¶ 14, 122 P.3d 506, *rev'd on other grounds*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Accordingly, Benson is foreclosed from arguing the unconstitutionality of Instruction 49 on appeal.

¶ 30 But even if Benson's argument were not foreclosed, we would agree with the State that giving Instruction 49 constituted harmless error. To hold a constitutional error harmless, we "must be able to declare a belief" that the error "was harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). When assessing an error's harmfulness, we look, in part, to "the overall strength of the State's case": "[t]he more evidence supporting the verdict, the less likely there was harmful error." *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992); *see also State v. Crowley*, 2014 UT App 33, ¶ 17, 320 P.3d 677. In *State v. Fontana*, for example, our supreme court noted the "nature and quantity of the evidence" against the defendant and declined to reverse a defendant's murder conviction, concluding that there was "no reasonable likelihood" that a different jury instruction "would have produced a more favorable result for the defendant." 680 P.2d 1042, 1049 (Utah 1984).

¶ 31 *State v. Crowley* illustrates the harm caused by an erroneous jury instruction when the prosecution presents an otherwise weak case against the defendant. *See* 2014 UT App 33, 320 P.3d 677. After pawning a stolen iPod, Crowley was charged with theft by receiving. *Id.* ¶¶ 2–3. The trial court gave a stolen-property instruction nearly identical to the instruction given here. *Id.* ¶ 3. The prosecution "based its case almost entirely on the jury's application of the presumption" contained in that jury instruction. *Id.* ¶ 18. In fact, the prosecution "presented no evidence directly linking [Crowley] to the iPod's theft." *Id.* As a result, this court concluded that the *Crowley* jury instruction

was both erroneous and prejudicial. *Id.* ¶¶ 16, 19.

¶ 32 Unlike the State's case in *Crowley*, the State's case against Benson did not rely heavily on the presumption contained in the erroneous jury instruction. Even without the stolen-property presumption, the State's case against Benson was strong. In Benson's hotel room, police found a cell phone stolen during the Burger King robbery and a bag with $500 in small bills. This is the only property to which the challenged jury instruction could apply. Even excluding the cell phone and cash, the evidence presented at trial tied Benson closely to the charged robberies. Benson admitted stealing the blue Nissan Sentra in the course of robbing the taqueria. Within hours of the taqueria robbery, the stolen blue Nissan was used in the Burger King robbery and a car matching its description was used in the gas station robbery. Behind the bathroom wall in Benson's hotel room, officers found a black airsoft gun matching the description of the weapon wielded in those robberies. Eyewitnesses from each of the four robberies described an armed man whose height, build, and complexion are generally consistent with Benson's. And Benson's decision to flee from Officer Coles when he was spotted in the blue Nissan supported the inference that Benson committed the Burger King robberies. *See State v. Holgate*, 2000 UT 74, ¶ 23 & n. 6, 10 P.3d 346. Given the robustness of the State's case against Benson, we conclude that giving Instruction 49 was harmless beyond a reasonable doubt. Accordingly, we would not reverse Benson's convictions based on Instruction 49 even if his counsel had not invited the trial court's error.

## CONCLUSION

¶ 33 For the foregoing reasons, the judgment of the trial court is affirmed.