**STATE of Utah, Plaintiff and Respondent,**

v.

**Wesley Allen TUTTLE, Defendant and Appellant.**

No. 20964.

Supreme Court of Utah.

Sept. 15, 1986.

---

1. 621 P.2d 691 (Utah 1980).

2. *Id.* at 693.

See also 713 P.2d 703.

Thom D. Roberts, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Stephen J. Sorenson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Wesley Allen Tuttle appeals from a jury conviction on a charge of escaping from official custody while incarcerated at the Utah State Prison. At trial, Tuttle claimed that he was forced to escape because of duress. On appeal, he contends that the trial court's instruction to the jury on the duress defense was improper because in the context of a charge of escape the trial court added three conditions qualifying the statutory defense. U.C.A., 1953, § 76–2–302 (Repl.Vol. 8B, 1978). We conclude that the trial court properly modified the defense to adapt it to a charge of escape and therefore affirm the conviction.

On August 21, 1984, defendant Wesley Allen Tuttle was incarcerated at the Utah State Prison serving a life sentence for capital homicide.[1] On that day, Tuttle and another inmate, Eugene Brady, were assigned to repair lights in the medium security visiting room. According to Brady, he was informed by an unidentified inmate while he was in the restroom and separated from Tuttle that he and Tuttle would be killed by other inmates if they returned to the main corridor. Brady immediately returned to Tuttle and told him, "We've got big problems."

Tuttle and Brady immediately made their escape, joined by another inmate, Walter Wood. Because the three were dressed as maintenance personnel and had already passed several security checkpoints as part of their work assignment, they had little trouble walking out of the prison unnoticed. Brady and Wood were apprehended later that day, but Tuttle remained at large until he was found in Las Vegas in February of 1985. He was charged with escaping from official custody in violation of section 76–8–309 of the Code. U.C.A., 1953, § 76–8–309 (Repl.Vol. 8B, 1978).

At trial, Tuttle asserted that he had been forced to escape under duress and offered a jury instruction setting forth nearly verbatim the statutory compulsion defense found in section 76–2–302(1) of the Code,[2] which provides in relevant part:

> You are instructed that pursuant to the laws of the State of Utah, it is a complete defense to the charge in this case if the Defendant acted under compulsion. Compulsion under the law is when an individual engaged in proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him, or a third person, which force or threatened force

---

1. Because we must determine whether the duress instruction was properly given and whether it correctly defined the elements of the defense, the evidence at trial is considered in the light most favorable to the establishment of the defense. *See State v. Myers,* 233 Kan. 611, 616, 664 P.2d 834, 838 (1983).

2. Tuttle's proposed instruction stated:

(1) A person is not guilty of an offense when he engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would not have resisted.

The trial court refused Tuttle's proffered instruction on compulsion and instead gave the instruction as it had been suggested by the prosecutor.[3] That instruction qualified the duress defense in an escape case, stating that Tuttle could avail himself of the defense only if the jury found (i) that Tuttle was faced with a specific threat of death or substantial bodily injury, (ii) that there was no time for complaint to the authorities or there was a history of futile complaints, and (iii) that Tuttle immediately reported to authorities after escape. The jury rejected Tuttle's duress defense and convicted him of escape.

On appeal, Tuttle contends that the trial court committed reversible error by qualifying the duress defense in the context of an escape. He contends that in effect the court narrowed the statutory definition and thereby expanded the definition of criminal escape. We disagree.

Before specifically discussing the instruction, a few observations on the development of Utah's criminal code are warranted. The definitions of various common law crimes and defenses evolved over a long period of time as the law adapted to specific fact situations.

While this organic growth permitted subtle shifts and developments in the law to deal with unique situations, the resulting criminal code could not always be characterized as consistent or rational. See La-Fave & Scott, Handbook on Criminal Law, ch. 2, § 9, at 60 (1972). When Utah first enacted its criminal statutes, most of them consisted simply of a codification of the common law of crimes as it then existed. See, e.g., Compiled Laws 1876 tit. VIII, § 1917 (definition of murder); State v. Russell, 106 Utah 116, 125, 145 P.2d 1003, 1007 (1944) (legislature had merely adopted the common law definition of murder); Compiled Laws 1876 tit. VIII, § 1921 (definition of manslaughter); State v. Cobo, 90 Utah 89, 96, 60 P.2d 952, 956 (1936) (statutory definition of manslaughter was but declaratory of the common law). Many of these statutes were amended over the years, but still retained their basic common law character. As such, they were subject to the same criticism as the common law. See, e.g., Note, Utah's New Penal Code: Theft, 1973 Utah L.Rev. 718, 719–33. In an effort to rationalize, clarify, and improve upon the frequently archaic common law definitions of crimes, the legislature in 1973 repealed wholesale all the prior substantive criminal statutes (including, necessarily, defenses) and enacted a sweeping new penal code that departed sharply from the old common law concepts. 1973 Utah Laws ch. 196, codified at U.C.A., 1953, § 76–1–101 to –1401 (Repl.Vol. 8B, 1978). Cf. Note, Utah's New Penal Code: Theft, 1973 Utah L.Rev. 718, 733–34. As if to emphasize its departure from the old law, the 1973 Code specifically stated that the "common law of crimes is abolished," and

---

a person of reasonable firmness in that individual situation would not have resisted.

Therefore, unless the State proves to your satisfaction and beyond a reasonable doubt that the above elements of compulsion did not exist, it shall be your duty to return a verdict of not guilty.

3. The court gave the following instruction:
You are instructed that the defense of duress or compulsion is available only if the following conditions existed at the time of escape:
1. The defendant was faced with a specific threat of death or substantial bodily injury in the immediate future.

2. There is not time for complaint to authorities or there exists a history of futile complaints which make any result from such complaint illusory.
3. The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

If you find beyond a reasonable doubt from your consideration of all the evidence that all these conditions did not exist at the time of escape, then you should find that the defense of duress or compulsion is not available to the defendant.

it also provided that the old rule that statutes in derogation of the common law shall be narrowly construed should have no application to the new penal code. U.C.A., 1953, §§ 76–1–105 and –106 (Repl.Vol. 8B, 1978).

Included among the statutes affected by the repeal of criminal statutes that accompanied enactment of the new code was section 76–1–41(9), which had set out the broad common law defense of duress or compulsion. *See, e.g.,* U.C.A., 1953, § 76–1–41(9); U.C.A., 1943, § 103–1–40(9); *State v. Pearson,* 15 Utah 2d 353, 393 P.2d 390 (1964). In its place was enacted section 76–2–302, which is modeled after section 209 of the Model Penal Code, although it was quite similar in substance to the pre-code definition of the defense. Neither the old nor the new duress defense as set forth in the Utah statutes discusses how that defense is to be tailored in response to a charge of escape, nor have we been able to locate any Utah cases construing the defense in that context. However, cases from other jurisdictions indicate that when duress was alleged as a defense to an escape charge at common law, the courts added certain conditions to the defense, conditions that were mirrored in the trial court's instruction here, i.e., (i) that Tuttle was faced with a specific threat of death or substantial bodily injury, (ii) that there was no time for complaint to the authorities or there was a history of futile complaints, and (iii) that Tuttle immediately reported to authorities after escape. *See People v. Lovercamp,* 43 Cal.App.3d 823, 832–33, 118 Cal.Rptr. 110, 115 (1974).

As noted, in enacting the new criminal code, the legislature abolished the common law of crimes. U.C.A., 1953, § 76–1–105 (Repl.Vol. 8B, 1978). Moreover, because section 76–2–302 is based on the Model Penal Code and not on the common law, it does not necessarily bring in its train all the baggage constituting the common law duress defense. The legislature's expressed intent to abandon the common law of crimes and replace it with the new code might suggest we should not resort to common law precedents that would have been

pertinent to interpretation of our pre–1973 criminal statutes when faced with a situation not covered by the current code. That argument is persuasive when the new criminal code differs substantially from the old statutorily enacted common law and the reason for the difference is discernible. However, where the differences appear to be largely technical and we can discern no purpose for the diversion from the prior law, we should be free to refer to it for such interpretive assistance as it may offer. *See* 1 *Wharton's Criminal Law* § 9 n. 18 (1978). It would be foolish to ignore all the evolutionary experience represented by the common law simply because modern draftsmen have rewritten the old law in plainer language. *See* Crawford, *Statutory Construction* § 228, at 427 (1940).

The duress defense as enacted in Utah's current criminal code simply states the broadest contours of the defense as it might be raised against a criminal charge. Nothing in the 1973 Utah legislative history or in the commentary to the Model Penal Code indicates that the new code was intended to abolish subtle yet sound common law qualifications upon the defense as it relates to specific crimes that are consistent with its essential nature and that do not otherwise conflict with the provisions or the purposes of the new criminal code.

As noted, we have been unable to locate any pre–1973 Utah cases considering the common law defense of duress as it applies to the crime of escape. However, in modifying the defense in this case, the trial court relied on a California case explaining the elements of the common law definition of the duress defense in the context of escape and incorporating them into a statutory duress defense. *See People v. Lovercamp,* 43 Cal.App.3d at 832–33, 118 Cal.Rptr. at 115. *Lovercamp* appears to correctly state the law and has been widely followed since it was published. Interestingly, courts in Alaska, Arizona, Colorado, Delaware, Hawaii, Illinois, and Louisiana have been faced with the same question presented to us: what are the elements of a compulsion or duress defense when as-

serted in a case involving an escape charge? In each state, the legislature had, like ours, abolished all common law crimes and enacted a statutory defense of compulsion. None of those statutes included all the common law elements mentioned in *Lovercamp*, yet the courts in all seven states followed *Lovercamp*, finding that their statutes were inadequate to respond to the exigencies of an escape situation.[4] It is especially noteworthy that, like Utah, the Arizona and Colorado statutes were patterned on section 209 of the Model Penal Code. Those courts obviously saw nothing inconsistent between the Model Penal Code and the common law qualifications of the duress defense articulated in *Lovercamp*. In fact, in its most recent commentary on the Model Penal Code, the American Law Institute noted that escape is an "atypical situation" for application of the duress defense, but conceded that the defense might apply and cited the *Lovercamp* decision as an appropriate example of the application of the defense to escape. American Law Institute, Model Penal Code and Commentaries Part I § 2.09 at 377 & n. 42 (1980).

■ With this background in mind, we consider the instant instruction. The first qualification imposed on the defense by the trial court required that the defendant be faced with a specific, imminent threat of death or substantial bodily injury, an element noted by the California court in *Lovercamp*.[5] Although the Utah statute does not require a threat of death or bodily injury, it does require a threat or use of "unlawful physical force ... which ... a person of reasonable firmness ... would not have resisted." U.C.A., 1953, § 76–2–302(1) (Rep.Vol. 8B, 1978). Plainly, when the Utah legislature referred to "unlawful physical force," it did not intend that minor physical force or incidental bodily injury could justify criminal conduct such as escape. Therefore, we hold that in the context of escape, the threat or use of unlawful physical force alleged in support of a compulsion defense must be at least that which would cause substantial bodily injury.

The trial court's instruction also required that the threat of substantial bodily injury be *specific*. In *State v. Harding*, 635 P.2d 33 (Utah 1981), we found that this qualification comports with the defense. In *Harding*, this Court upheld the trial court's refusal to give a duress defense instruction where the evidence "[did] not support a finding of any threat of imminent use of unlawful force upon the defendant ... [because it lacked] the *specificity* which is necessary to establish the existence of an immediate threat." 635 P.2d at 35 (emphasis added). This part of the trial court's instruction, therefore, is not in error.

**4.** These courts differed in the rationale given for their action. *See Wells v. State*, 687 P.2d 346, 349 (Alaska Ct.App.1984) (legislative intent allowed courts to define common law specifics of statutory necessity defense); *State v. Wolf*, 142 Ariz. 245, 248, 689 P.2d 188, 191 (Ariz.Ct.App. 1984) (public policy considerations require more of duress defense than statute requires when applied to escape); *People v. Handy*, 198 Colo. 556, 559, 603 P.2d 941, 943 (1979) (additional element read into statutory duress defense as applied to escape); *Johnson v. State*, 379 A.2d 1129, 1132 (Del.1977) (earlier unreported trial court case required evidence to meet *Lovercamp* test); *State v. Horn*, 58 Hawaii 252, 253, 566 P.2d 1378, 1379 (1977) (relied on *Lovercamp* analysis); *People v. Unger*, 66 Ill.2d 333, 342, 5 Ill.Dec. 848, 362 N.E.2d 319, 323 (1977) (*Lovercamp* elements are relevant factors for jury to consider); *State v. Boleyn*, 328 So.2d 95, 97 (La.1976) (relied on *Lovercamp* analysis).

**5.** *Lovercamp* also included forcible sexual assault in its specifications of physical threats and harms. The trial court's instruction here did not; however, that issue was not presented. The inclusion of forcible sexual assault as a physical threat or harm justifying escape seems entirely appropriate. See *Lovercamp* rationale in *People v. Unger*, 66 Ill.2d at 340, 362 N.E.2d at 322, and *State v. Boleyn*, 328 So.2d at 97. The threat of forcible sexual assault is at least as great an assault on the personal integrity of an individual as a threat to commit other bodily injury. We can imagine no reason for permitting the latter to be the foundation for a defense and not the former. Although one incarcerated for a crime must expect confinement under stark conditions, he or she cannot reasonably be expected to bear forcible sexual degradation.

The trial court also instructed the jury that the duress defense was not available in response to an escape charge unless there was no time for complaint to the authorities or a history of futile complaints. *Lovercamp* found this to be a common law element of the defense. We find nothing to suggest that it is inconsistent with the legislature's 1973 enactment of the criminal code. In fact, it seems entirely consistent with section 76–2–302(1), which reads: "A person is not guilty of an offense when he engaged in the proscribed conduct because he was *coerced* to do so...." (Emphasis added.) A person obviously cannot be "coerced" to act unlawfully unless there is no reasonable alternative to commission of the crime charged. *Cf. United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 634–35, 62 L.Ed.2d 575 (1980) ("Under [the duress and necessity] defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, ... the defenses will fail.");[6] *accord United States v. Boomer*, 571 F.2d 543, 545 (10th Cir.1978), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 411 (1978).

In the context of an escape charge, a reasonable alternative to escape for one incarcerated would always be to complain to authorities in order to remove the threat. Therefore, requiring the jury to find that this alternative was not reasonably available is entirely consistent with the defense and the concept underlying it. The trial court did not err in reading this qualification into the defense.

Finally, the trial court instructed the jury that duress would not be a defense to an escape charge unless the defendant reported to the authorities immediately after the escape. We find that the importation of this common law requirement into the statute also was proper and consistent with the statute's purpose. The law recognizes that a defendant faced with a serious threat of bodily harm who has no alternative but escape should not, in all fairness, be convicted of a crime for that action. However, while a defendant may be forced to escape a specific threat, the defense does not give an escaped convict a license to remain indefinitely at large. The compulsion defense is certainly not a grant of amnesty. Once the coercion justifying the escape disappears, there is no policy reason to justify the convict in remaining at large. *See, e.g., United States v. Bailey*, 444 U.S. at 415, 100 S.Ct. at 637; *United States v. Michelson*, 559 F.2d 567, 570 (9th Cir.1977). The trial court was correct in concluding that an escapee must make a bona fide effort to surrender himself to the authorities as soon as the specific coercion that forced him to escape is no longer present.

Because the trial court's qualifications on the duress defense were proper, we affirm Tuttle's conviction.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

**6.** *Bailey* was decided under the common law because there is no statutory duress defense under federal law. However, *Bailey* is cited here only for its statement of the common law definition of "coerced." When the Utah legislature used "coerced" in section 76–2–302(1), we assume that it intended the word to carry this common law meaning. *State v. Johnson,* 44 Utah 18, 137 P. 632 (1913).