**2015 UT App 235**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
MESIA SII MAAMA,
Defendant and Appellant.

Opinion
No. 20131066-CA
Filed September 11, 2015

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 121904204

John B. Plimpton and Wojciech S. Nitecki, Attorneys
for Appellant

Sean D. Reyes and Ryan D. Tenney, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1     Mesia Sii Maama appeals from her convictions of assault, a class B misdemeanor, and riot, a third degree felony.[1] We affirm.

---

1. Mesia was tried jointly with two other defendants. Each codefendant filed a separate appeal, *see State v. Maama*, 2015 UT App 234; *State v. Pham*, 2015 UT App 233.

BACKGROUND

¶2    Late one night in March 2012, Mesia, her brother Semisi Maama, a female friend (Friend), and Anh Tuam Pham, whom Mesia had been dating, drove Friend's car to a fast-food restaurant.[2] Mesia and Friend went inside the restaurant, and Semisi and Pham stayed outside in the parking lot drinking alcohol and listening to music. Meanwhile, two parking stalls away, a man (Father) and his eleven-year-old son (Child) sat in their car waiting for Child's mother (Mother) to return.

¶3    Minutes later, Pham and Semisi approached Father's vehicle. Pham opened Father's door, pointed a gun at him, and ordered him to give them money. Father could not comply, because Mother had his wallet inside the restaurant, and Pham pistol-whipped him. Father told the men that his son was present and pleaded with Semisi for sympathy, but Semisi repeated Pham's demands for money. Child offered the men his allowance money, and Pham took it from him. Angered, Father ripped the gun out of Pham's hand, got out of the car, knocked Semisi to the ground, and began fighting with Pham. Eventually, Pham and Semisi "backed off" of Father.

¶4    Mesia emerged from the restaurant to see Semisi trying to stand up and bleeding, and she surmised that he and Pham had been in an altercation with Father, who appeared to be a "big guy." Deciding it would be prudent to leave, Mesia backed Friend's car out of the parking stall and reparked it behind

---

2. "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *See State v. Dunn*, 850 P.2d 1201, 1205 (Utah 1993). "We recite the facts accordingly and present conflicting evidence only to the extent necessary to understand the issues raised on appeal." *Id.* at 1205–06 (citation omitted).

Father's vehicle. Pham helped Semisi get in the back seat and then hopped in the front passenger's seat. Mesia ran back to the restaurant to shout "let's go" to Friend and returned to the driver's side of the car. Instead of driving off, Mesia, Pham, and Semisi waited for Friend to come out of the restaurant.

¶5    Believing that the fight was "over" and the situation had "defused," Father waved the gun and yelled, "Why are you guys trying to rob me?" This prompted Mesia to take the situation "into [her] own hands." She approached Mother, who had recently returned to the parking lot, and asked her to get the gun from Father, promising to leave if Mother returned the gun. When Mother refused, Mesia approached Father, saying "Please, give me the gun." Father pushed Mesia and told her to get away from him.

¶6    When Father turned his attention to Semisi and Pham, Mesia punched Father in the face. Still holding the gun, Father reached for Mesia but slipped, and Pham and Semisi "jumped" him. Father tried to protect himself as Mesia, Pham, and Semisi hit and kicked him on the ground. Mesia ultimately wrestled the gun from Father's hand. Soon after, Friend came out of the restaurant, and the four companions got into the car and drove away.

¶7    Mesia was charged with aggravated assault and riot. Semisi and Pham also faced charges stemming from these events, and the three codefendants were tried together before the same jury in May 2013.

¶8    At trial, the witnesses gave conflicting accounts regarding Father's use of the gun. Although Mother testified Father was pointing the gun "up," not "at anybody," Child did not recall whether Father pointed the gun at anyone. He also testified that Father had his arms up and "wasn't doing anything with the gun" while Semisi and Pham sat in the car.

¶9     In contrast, Mesia, Semisi, and Pham testified that Father pointed the gun at them. Mesia testified that Father pulled the trigger. While testifying in support of her theory that she acted in self-defense when she hit Father, Mesia said she did not know Semisi and Pham had a gun or had planned a robbery. She testified that she first noticed the gun in Father's hand while she, Semisi, and Pham were waiting for Friend. According to Mesia, the gun's slide was not open and she saw Father pull the trigger twice but it did not fire. After that, she testified that Father pulled back the slide, which Mesia believed signified Father loading the gun.[3] Semisi and Pham similarly testified that Father pointed the gun in their direction, but Semisi testified that Father did not pull the trigger.

¶10    Father testified on direct examination that he "remember[ed] looking at the gun and the chamber was open" so "it wasn't able to fire." He also testified that he "could have" pointed the gun at Pham and Semisi, but he "never pointed it at [Mesia]"—"Not once." When asked whether he pulled the trigger, Father answered, "Um, I—I—I believe I did." The prosecutor responded, "You did?" Father replied, "I don't know if I pulled the trigger. I just had it in my hand, but I was shaking it. You know what I mean? I don't [think I] deliberately . . . pulled the trigger." To clarify, the prosecutor asked, "So it was just in your hand shaking?" Father answered, "Yes." He later testified, "I wasn't trying to fire at nobody," "I just wanted to get rid of the gun."

¶11    After the codefendants rested their cases, the prosecutor recalled Father to provide rebuttal testimony. Contrary to his previous testimony, Father denied pointing the gun at the codefendants and likewise denied pulling the trigger. Semisi's

_____

3. Pham also testified that the gun was his but that he does not carry it loaded and a person has to pull the slide back to load it.

counsel objected to Father's rebuttal examination on the basis that "[r]ehashing [Father's] direct [testimony] is not rebuttal." The court overruled this objection, and the prosecutor continued.

¶12    When Mesia's counsel began cross-examining Father, the following exchange, with our emphasis, ensued:

> [Mesia's counsel]: [Father], during your direct I have a habit of taking very detailed notes.
>
> [Father]: All you guys do.
>
> [Mesia's counsel]: Well, it depends. This is what I have when you were questioned about pointing a gun you said I don't remember, could have. Is that still your testimony today?
>
> [Father]: Yeah. Yeah.
>
> [Mesia's counsel]: Could have?
>
> [Father]: Yes.
>
> [Mesia's counsel]: And then you testified that the chamber wouldn't even fire which is similar to what you're saying today, correct?
>
> [Father]: Yeah. I remember looking at my gun in the right hand, you know, everything is going on 'cause I was up like this. And I just remember kind of glancing at it and seeing that the slide was back and it was open.
>
> [Mesia's counsel]: Okay. And then the question— there was a question to you on the first day [of trial] about pulling the trigger and you testified I believe I did.
>
> [Father]: Yeah, I—
>
> [Mesia's counsel]: Do you remember saying that?

THE COURT: *See my notes say "don't know." So we're not supposed to be relying so heavily on notes*. We need to let—

[Mesia's counsel]: Well, I get to question him about it. I mean—

THE COURT: Well, okay. But don't make it—

[Mesia's counsel]: He just said yes he believed he did. I mean—

[Father]: But I don't believe I pulled trigger. I said I could have because if it's in my hand and I'm shaking—

[Mesia's counsel]: So you could have pulled the trigger?

[Father]: Yeah, but I wasn't pointing the gun at that time, I was like this.

[Mesia's counsel]: Okay.

[Father]: So I wasn't—I never pointed the gun directly at anyone's face or anything like that.

¶13    After the codefendants finished cross-examining Father, the State rested its case. When the court excused the jury, Mesia moved for a mistrial,[4] arguing it was "inappropriate" for the judge to "interject with [her] notes and make a comment" during Father's rebuttal examination. The interruption stopped Father from "answering [the question] in [Mesia's] favor" and showed "bias" by "ma[king] it clear to the jury that [the judge did not] believe [Mesia's] witness." The judge responded, "Well, then again, it's my job to make sure somebody doesn't misrepresent the evidence . . . he had said don't know before." The prosecutor

---

4. Semisi and Pham joined in the motion.

responded that the judge "did the appropriate thing to make sure that what came out was accurate" but the jurors should be instructed that any of the judge's rulings should not affect their judgment. Mesia's counsel countered that the judge's statement "wasn't a ruling, it was an interjection." The court denied the motion but gave a curative instruction.

¶14　When the jury returned, the trial court judge gave the following admonition, again with our emphasis:

> As you heard earlier today, we had our little discussion about notes and this is why you shouldn't rely too heavily on notes because I'm not so confident that anybody is right or wrong. *Luckily in this situation you have the witness on the stand who clarified himself* and it's up to you to remember his testimony the way you remember it and never be overconfident in your notes. Okay.

¶15　The jury evidently rejected Mesia's claim of self-defense. Although it acquitted her of aggravated assault, the jury returned a guilty verdict on riot and on the lesser included offense of assault. Mesia appeals.

ISSUES ON APPEAL

¶16　Mesia raises four issues on appeal. First, she contends that the trial court denied her a fair trial by improperly commenting on the evidence regarding Father's use of the gun. Second, she contends that the trial court committed reversible error in issuing a flawed curative instruction, in failing to instruct the jury on the State's burden of proof with respect to self-defense, and in failing to instruct the jury to consider self-defense in relation to Mesia. Third, she contends that the evidence was insufficient to support her conviction of assault because no reasonable jury could conclude beyond a reasonable doubt that

she did not act in self-defense. Finally, she contends that the cumulative effect of the trial court's errors requires reversal.

ANALYSIS

I.  Improper Comment During Father's Rebuttal Testimony

¶17   Mesia argues the trial court should have granted her motion for a mistrial on the ground that the court improperly commented on the evidence concerning whether Father pulled the gun's trigger. Mesia points to the dialogue during Father's rebuttal testimony when the judge "sua sponte interrupted [Mesia's] cross-examination of [Father] . . . to say that, according to her notes, [Father] testified during the prosecution's case-in-chief that he did not know whether he pulled the trigger" of the gun. In Mesia's view, the judge's comment told the jury what the evidence was, and amounted to "an unsolicited, gratuitous, blatant comment on the evidence that interfered with Mesia's cross-examination." Furthermore, Mesia asserts that the judge's comment was prejudicial because it "likely led the jury to disbelieve or disregard the compelling evidence that [Father] pulled the trigger."[5] Because her "entire defense hinged on whether the jury believed she acted in self-defense," Mesia asserts there is a reasonable likelihood that whether Father pulled the trigger was determinative of the guilty verdict.[6]

---

5. Mesia does not claim the trial court's interjection influenced the jury's verdict in convicting her of riot; her contention is limited to the assault conviction.

6. Mesia also contends that the prejudice caused by the judge's improper comment "was further exacerbated by her use of facial expressions to express disbelief at certain testimony." Mesia asserts the improper comment, combined with the judge's facial

(continued…)

¶18   The State agrees that "a judge may not comment on the underlying substance of a witness's testimony" but contends the judge's comment here was "more limited, being confined to a correction about what [Father] had said at trial, rather than about whether his testimony was actually true or not." The State argues that "what the judge did here was nothing more than try to prevent one side's attorney from improperly commenting on what the testimony had been."

¶19   "A trial court's denial of a motion for mistrial will not be reversed absent an abuse of discretion." *State v. Butterfield*, 2001 UT 59, ¶ 46, 27 P.3d 1133 (citation and internal quotation marks omitted). "Unless the record clearly shows that the trial court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of

_____

(…continued)

expressions, indicated to the jury that the judge "disbelieved the defense." On the second day of trial, during a conference regarding jury instructions, Mesia's counsel asked the court to modify the instruction on judicial neutrality to "add facial expressions." The trial court judge acknowledged this concern, stating, "I rolled my eyes equally for the Defense and Prosecution, because everybody's witnesses had a few eye-rolling moments. All right, I will watch it." We agree with the State that any error was harmless—no party disagreed with the judge's description of her expressions and the record does not reflect that "those facial expressions favored one side over the other." We therefore cannot conclude that the judge's facial expressions exacerbated any prejudice caused by the judge's improper comment. However, for reasons explained below, we agree with Mesia that a judge should forbear from conveying skepticism of any witness, through facial expressions or otherwise.

discretion." *Id.* (citation and internal quotation marks omitted). In other words, to obtain reversal, the defendant must show that the challenged incident "*substantially influenced*" the verdict. *See id.* ¶ 47 (citation and internal quotation marks omitted).[7]

¶20    Rule 19(f) of the Utah Rules of Criminal Procedure instructs that "[t]he court shall not comment on the evidence in the case, and if the court refers to any of the evidence, it shall instruct the jury that they are the exclusive judges of all questions of fact." "In the course of a jury trial, a judge must not act or speak so as to indicate an opinion either on the credibility of evidence or on disputed issues of fact." *State v. Beck*, 2007 UT 60, ¶ 15, 165 P.3d 1225. Likewise, a judge may not "purport to tell the jury either what the evidence is or what the facts are." *See State v. Schoenfeld*, 545 P.2d 193, 197 (Utah 1976). "This is because '[i]t is the sole and exclusive province of the jury to determine the facts in all criminal cases, whether the evidence offered by the State is weak or strong, is in conflict or is not controverted.'"

---

7. Mesia relies on *State v. Beck*, 2007 UT 60, 165 P.3d 1225, for her argument that this issue should be reviewed for correctness, rather than abuse of discretion. *See id.* ¶¶ 6–7, 10. She argues "a trial judge is less likely to fairly adjudicate a motion for a mistrial on the basis of the judge's own conduct than the conduct of someone else." But because Mesia's reliance on *Beck* is misplaced, we reject this argument. Although, in *Beck*, the supreme court reviewed this court's application of the law for correctness, it reviewed a district court's improper questioning for whether the court "exceeded the range of discretion permitted by the rules of evidence and case law." *Id.* ¶ 7. In other words, the supreme court reviewed the district court's conduct for an abuse of discretion. *Id.* Furthermore, even under a correctness standard, we would conclude that the judge's comments were erroneous, but not prejudicial. *See infra* ¶¶ 22–27.

*State v. Davis*, 2013 UT App 228, ¶ 97, 311 P.3d 538 (alteration in original) (quoting *State v. Green*, 6 P.2d 177, 181 (Utah 1931)).

¶21 We agree that the trial court improperly commented on the evidence in this case. It appears the judge may have believed that Mesia's counsel misstated Father's testimony and stepped in to assert that her own notes differed from counsel's. Although she went on to caution that no one should "rely[] so heavily on notes," by telling the jury what her own notes indicated, the judge "purport[ed] to tell the jury either what the evidence is or what the facts are." *See Schoenfeld*, 545 P.2d at 197. Because the judge "indicate[d] an opinion . . . on disputed issues of fact" with respect to whether Father pulled the trigger, *see Beck*, 2007 UT 60, ¶ 15, we conclude the interjection constituted an improper comment on the evidence.

¶22 Furthermore, because counsel did not misstate Father's testimony, we are not convinced the interjection merely corrected counsel's characterization of what Father said. Father testified both that he believed he did pull the trigger and that he did not know whether he did. Counsel merely inquired into the inconsistency in Father's testimony. The court was not faced with a situation in which it needed to prevent counsel from improperly suggesting what the testimony had been. Accordingly, given that there was nothing for the court to correct, the trial court's interference was unwarranted.

¶23 Nevertheless, the judge's interjection did not undermine the overall fairness of the trial. Although the court's comment went to whether Father pulled the trigger, what the judge recalled from her notes was not determinative of whether Mesia acted in self-defense, and therefore likely did not substantially influence the jury's verdict. Mesia claimed she acted in self-defense when she punched Father. Determining whether Mesia acted in self-defense hinged on whether she "reasonably believe[d] that force or a threat of force [was] necessary to

defend" against another's "imminent use of unlawful force." *See* Utah Code Ann. § 76-2-402(1)(a) (LexisNexis 2012). At the point Mesia punched Father, Father's fight with Semisi and Pham was already "over." Yet, Mesia reengaged with Mother and Father to request that Father return the gun. Although there is conflicting evidence of whether Father pulled the trigger or pointed the gun at Mesia, Semisi, and Pham, the jurors had to decide whether the State met its burden to disprove that Mesia reasonably believed force was necessary to defend herself and the others. They had to consider the nature and immediacy of Father's threat. *See id.* § 76-2-402(5)(a)–(b). Given the circumstances, we believe the factual dispute about whether Father pulled the gun's trigger was only a small part of the jurors' resolution of Mesia's self-defense claim. Thus, without relying on a finding that Father did or did not pull the trigger, the jurors could have concluded Mesia simply acted to get the gun back, not to protect herself or others.

¶24    Our conclusion is bolstered by the fact that the conflicting evidence over whether Father pulled the trigger did not permeate the trial or the parties' closing statements. The trial court's interjection was an isolated comment made during a three-day trial that yielded approximately 512 pages of transcribed testimony and argument. The prosecutor's closing statements focused on whether Father pointed the gun at anyone instead of whether he pulled the trigger. The prosecutor alluded to the interjection only once, and when he noted that Father had "clarified himself," the prosecutor reminded the jurors it was their duty to decide the facts. For instance, the prosecutor argued as follows:

> In his words [Father] said the situation was deescalated, they're gone from him they're in the car. He never aimed it or pointed it at anyone. And again, those—this is where you're the fact finder as to what you remember. There was some

clarification on the stand but at least from my understanding and I could be wrong, just as anybody else could be, he has the gun, he's shaking. But he never testified that he raised it up and pointed it at anyone or deliberately pulled the trigger at anyone. He could have had his finger on the trigger. But you're the fact finders and I'm not going to beat that horse.

Although the prosecutor argued the facts in the light most favorable to the State's case (as is expected), he did not unduly reiterate or emphasize the judge's interjection about whether Father pulled the trigger.

¶25   Only Semisi's counsel expressly mentioned the judge's interjection during closing arguments and, in doing so, argued for an interpretation of Father's testimony that favored Mesia. Specifically:

> [t]he situation is deescalated. Mesia comes out, sees the gun being—trigger being pulled. [Father] . . . admitted that he had pulled the trigger at least once. When the judge said something, [Mesia's counsel] asked him, he was answering yes, I did, the judge interrupted him and then he changed it back to well, I believe I may have. I ma[y] have. He softened it because he's feeling like that was a bad act. He admitted in direct and then softens it with a—well, I think I maybe. Maybe.

Thus, during closing arguments the trial court's comment was mentioned only once—to emphasize that Father prevaricated in his testimony concerning whether he pulled the trigger. Because the parties did not treat the issue as pivotal, and because in any event the jury likely understood that Father had contradicted himself on this point, we do not believe that the court's interjection "substantially influenced" the verdict. *See State v.*

*Butterfield*, 2001 UT 59, ¶ 47, 27 P.3d 1133 (emphasis omitted) (citation and internal quotation marks omitted).

¶26　In sum, although commenting on the evidence was improper, we conclude the trial court's interjection did not likely influence the jury and thus did not render the trial unfair. Accordingly, we hold that the denial of Mesia's motion for mistrial was not "plainly wrong" and thus not an abuse of the court's discretion.

## II.　Jury Instructions

¶27　Mesia next contends that the jury instructions given by the trial court were flawed in three ways. Mesia first argues that the court erred in giving the curative instruction because the instruction included an improper comment on the evidence. Second, Mesia contends the jury instructions regarding self-defense were inadequate because the trial court failed to instruct the jury on the State's burden to disprove beyond a reasonable doubt that Mesia acted in self-defense. Third, Mesia contends the trial court did not clearly instruct the jury to consider the self-defense jury instructions in connection with Mesia's defense.

¶28　Mesia did not preserve her challenge to the jury instructions but seeks our review under the plain-error and ineffective-assistance-of-counsel exceptions to the preservation rule. To establish plain error, an appellant must show "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). To demonstrate ineffective assistance of counsel, an appellant must show (i) that trial counsel's "performance was deficient" and (ii) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under both the plain-error analysis and the ineffective-assistance-of-counsel

analysis, Mesia must demonstrate that any purported error prejudiced her defense. *See Dunn*, 850 P.2d at 1225.

¶29   Jury instructions require no particular form so long as they accurately convey the law. *See State v. Marchet*, 2009 UT App 262, ¶ 23, 219 P.3d 75. "[I]f taken as a whole they fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, is not as accurate as it might have been is not reversible error." *State v. Davis*, 2013 UT App 228, ¶ 104, 311 P.3d 538 (citation and internal quotation marks omitted). Furthermore, "[w]e review challenges to jury instructions under a correctness standard." *Id.* ¶ 15 (citation and internal quotation marks omitted).

A.   Curative Instruction

¶30   Mesia contends the trial court improperly commented on the evidence a second time when the court issued an admonition intended to cure the prejudice created by the court's interjection regarding Father's testimony about his handling of the gun. The court told the jury that "[l]uckily in this situation you have the witness on the stand who clarified himself." This statement, Mesia asserts, "vouched for the credibility" and accuracy of the answer Father gave after the judge interrupted him: "I don't believe I pulled trigger. I said I could have . . . ."

¶31   We conclude that the curative instruction given by the court in response to Mesia's counsel's objection to the court's interjection was not prejudicial when viewed in context and with the other instructions. Mesia takes issue with the isolated language that Father "clarified himself," but the curative instruction also included language reminding the jurors it was their responsibility to remember Father's testimony, expressing doubt regarding the accuracy of any notes about his testimony, and cautioning them not to "rely too heavily on notes." This instruction as a whole emphasized the jurors' duty to depend on their own memories of the testimony presented at trial.

¶32    In addition, other instructions informed the jury that "[d]eciding what the facts are is your job, not [the judge's]." Instruction 4 told the jury that it must "decide the factual issues," i.e., issues "relate[d] to what did, or did not, happen in this case." Further, the court instructed the jury, "Neither the lawyers nor I decide the case. That is your role. Do not be influenced by what you think our opinions might be. Make your decision based on the law given in my instructions and on the evidence presented in court." Instruction 15 focused on judicial neutrality, stating, "As the judge, I am neutral. If I have said or done anything that makes you think I favor one side or another, that was not my intention. Do not interpret anything I have said or done as indicating that I have any particular view of the evidence or the decision you should reach." Given these other jury instructions, we are not convinced that the curative instruction's isolated statement that Father "clarified himself" on the stand created a reasonable likelihood of a different result.

¶33    In short, even assuming there was error in the curative instruction, Mesia has not demonstrated she was prejudiced by it. Accordingly, we conclude her claims of plain error and ineffective assistance of counsel based on the curative instruction fail.

B.    Instruction Regarding the State's Burden of Proof

¶34    Mesia asserts that the relevant jury instruction, Instruction 57, did not adequately explain to the jury the State's burden to disprove self-defense beyond a reasonable doubt. Specifically, Mesia argues that the instruction asked the jury to determine the threshold issue of whether self-defense had been raised and that this may have confused the jury about whether self-defense applied to the charges against her. We are not convinced.

¶35    Utah law requires the State "to disprove the affirmative proposition of self-defense, not just prove guilt, beyond a

reasonable doubt." *State v. Garcia*, 2001 UT App 19, ¶ 16, 18 P.3d 1123. "When the defendant has reached the threshold to merit self-defense instructions," trial courts must issue special jury instructions that "clearly communicate to the jury what the burden of proof is and who carries the burden." *Id.* Accordingly, "[t]rial courts should separately instruct each jury clearly that the State must disprove self-defense, and other affirmative defenses, beyond a reasonable doubt." *Id.*

¶36 Reading the instruction as a whole, we are not persuaded Mesia has demonstrated that Instruction 57 inadequately instructed the jury on the law applicable to the case. The instruction reads,

> [T]he laws of Utah do not require a defendant to establish self-defense by a preponderance or greater weight of the evidence. *Once the issue of self-defense is raised*, whether by the prosecution's witnesses or those of the defense, the prosecution has the burden to prove beyond a reasonable doubt that the act was not done in self-defense. The defendant has no particular burden of proof but is entitled to be found not guilty if there is any basis in the evidence from either side sufficient to create a reasonable doubt *as to whether he acted in self-defense*.

(Emphasis added.) Mesia argues that the clause "[o]nce the issue of self-defense is raised" communicated to the jury that "the prosecution needed to disprove self-defense *only if the issue of self-defense was raised*." Mesia further argues that the phrase "as to whether he acted in self-defense" implies that Mesia would have had to produce positive evidence that she acted in self-defense. We are not persuaded by Mesia's argument.

¶37 The instruction's phrasing did not create ambiguity or confusion regarding the applicability of the State's burden of

proof. It correctly described to the jury the prosecutor's burden and the standard of proof, and it pointed out that "[t]he defendant has no particular burden of proof but is entitled to be found not guilty if there is any basis in the evidence from either side sufficient to create a reasonable doubt as to whether he acted in self-defense." *See Garcia*, 2001 UT App 19, ¶¶ 7–16, 18 (providing a thorough analysis concerning the allocation of the burden of proof with respect to self-defense instructions). As a result, Mesia has not established that Instruction 57 constitutes error, let alone obvious error, and her plain-error claim fails. Similarly, because any objection to Instruction 57 would have been futile, Mesia's trial counsel did not render deficient performance. *See Layton City v. Carr*, 2014 UT App 227, ¶ 19, 336 P.3d 587 ("[C]ounsel's performance at trial is not deficient if counsel refrains from making futile objections, motions, or requests." (citation and internal quotation marks omitted)). Mesia therefore is not entitled to relief under her theories of plain error or ineffective assistance of counsel.

C.      Whether the Jury Instructions Conveyed That Mesia Raised Self-Defense

¶38     Mesia also argues that the jury instructions failed to convey that "self-defense was raised or that it otherwise applied to the charges against Mesia." In particular, she claims the self-defense instructions were deficient because their use of masculine pronouns suggested the defense applied only to her male codefendants, and because they did not specifically state that self-defense applied to her.

¶39     Here, for three reasons, Mesia has not established that she was prejudiced by the alleged deficiencies in the self-defense instructions. First, the other self-defense instructions were gender neutral. For instance, Instruction 51, the initial self-defense instruction, explained that "*[a] person* is justified in threatening or using force against another when and to the

extent that *he or she* reasonably believes that force is necessary to defend himself or a third person against such other's imminent use of unlawful force." (Emphasis added.) There are other examples. Instruction 52 explained that a "*person* is not justified in using force if *he or she*" initially provoked the use of force, etc. (Emphasis added.) Instruction 55 says that "*a person* does not have a duty to retreat." (Emphasis added.) Instruction 56 speaks in terms of "[i]f *one* is confronted by the appearance of peril." (Emphasis added.) Thus, the fact that Instruction 57 used the masculine pronoun in stating that the "defendant . . . is entitled to be found not guilty if . . . *he* acted in self-defense" does not convince us that the jury might have read the self-defense instructions as applying to only the male codefendants. (Emphasis added.)

¶40   Second, the compulsion instruction explicitly directed that it "applie[d] only to [Semisi's] claim of coercion in the alleged Robbery." Because the compulsion instruction was expressly limited to one charge against Semisi, we agree with the State that "the reasonable implication to the jury was that, unlike compulsion, self-defense applied to all" defendants and all charges. We therefore conclude that the instructions as a whole fairly instructed the jury that it could consider self-defense in connection with the charges against Mesia.

¶41   Finally, we are not persuaded that the jury was confused or misled regarding whether the self-defense instructions applied to Mesia. The overall tenor of the proceedings made clear to the jury that Mesia had raised self-defense as an affirmative defense. During opening statements, Mesia's counsel told the jury that Mesia "did nothing illegal. . . . [S]he was trying to . . . defend what she has a right to do under the law." The closing arguments also made plain that the jury should consider whether self-defense applied to the charges against Mesia. Mesia's counsel specifically asked the jury "to look carefully at the instructions regarding self-defense" because "there is self-

defense on the aggravated assault and there is self-defense on the riot for Mesia." The prosecutor's closing argument repeated an instruction on self-defense, explaining that "[t]here is a self-defense claim, specifically by Mesia Maama," and argued more than once that the facts of the case did "not . . . equal self-defense." Given these circumstances, we do not see how the jury could have been confused about whether Mesia had raised self-defense as an affirmative defense. For these reasons, we conclude Mesia has not established that the purported error in the self-defense instructions prejudiced her defense.[8]

### III. Sufficiency of the Evidence to Support the Assault Conviction

¶42    Mesia contends the evidence was insufficient to support her conviction for assault.[9] The parties agree the assault conviction was based on Mesia punching Father immediately after she approached him to ask for the gun. Mesia admits she punched Father, but contends the evidence was insufficient for conviction because "[n]o reasonable jury could have concluded beyond a reasonable doubt that Mesia did not reasonably believe

---

8. Although confusion was unlikely here, we agree with Mesia that instructing the jury using pronouns that correspond with the gender of the person or persons to whom they apply avoids any possible confusion and thus is the better practice.

9. Assault is "an attempt, with unlawful force or violence, to do bodily injury to another; . . . a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or . . . an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another." Utah Code Ann. § 76-5-102(1) (LexisNexis 2012). Mesia does not challenge the sufficiency of the evidence with regard to her riot conviction.

that punching [Father] was necessary to defend[] herself, Semisi, or Pham from [Father's] imminent use of unlawful force."

¶43 "We will reverse a jury conviction for insufficient evidence only if the evidence presented at trial is so insufficient that reasonable minds could not have reached the verdict." *State v. Fedorowicz*, 2002 UT 67, ¶ 40, 52 P.3d 1194 (citation and internal quotation marks omitted). "[I]n reviewing the sufficiency of the evidence, we refuse to re-evaluate the credibility of witnesses or second-guess the jury's conclusion." *Id.* (citation and internal quotation marks omitted). "We also assume that the jury believed the evidence that supports the verdict." *Id.*

¶44 A person is justified in using non-deadly force against another in self-defense "when and to the extent that the person reasonably believes that force or a threat of force is necessary to defend the person or a third person against another person's imminent use of unlawful force." Utah Code Ann. § 76-2-402(1)(a) (LexisNexis 2012). "In determining [the] imminence" of the threat or the "reasonableness" of force used in self-defense, "the trier of fact may consider . . . the nature . . . [and] the immediacy of the danger." *Id.* § 76-2-402(5)(a)–(b). "Force is justifiable under section 76-2-402 only if a reasonable belief in the imminence of unlawful harm and in the necessity of defensive force coincide with the defendant's use of force." *State v. Berriel*, 2013 UT 19, ¶ 14, 299 P.3d 1133.

¶45 Viewing the evidence in the light most favorable to the verdict, we believe the jury could conclude beyond a reasonable doubt that Mesia did not commit the assault against Father in self-defense. There was evidence that by the time Mesia saw Father holding the gun, the fight was "over" and the situation had "defused." Despite this de-escalation, Mesia approached Father, asking for the gun. The jury could reasonably conclude from this evidence that Father did not pose an "imminent"

threat to Mesia, Semisi, or Pham. Although Father waved the gun—and perhaps even pulled the trigger—some evidence suggested he never pointed it at anyone. As a result, the jury was justified in concluding that Mesia did not have a reasonable belief that punching Father was "necessary to defend" herself and her codefendants. Accordingly, the evidence is sufficient to support Mesia's assault conviction.

## IV. Cumulative Error

¶46    Finally, Mesia contends that even if her several claimed errors were not individually prejudicial, they constitute cumulative error and warrant reversal. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had." *See State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (omission in original) (citation and internal quotation marks omitted); *see also State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878 (explaining that "[i]f the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine [of cumulative error] will not be applied"). As discussed above, because we believe the errors in this case are so minor as to result in no harm, we conclude that their cumulative effect does not "undermine our confidence" in the fairness of the trial so as to warrant reversal of Mesia's convictions. *See Dunn*, 850 P.2d at 1229.

## CONCLUSION

¶47    We conclude that although the trial court improperly commented on the evidence, the comment did not substantially influence the verdict. The trial court therefore did not exceed its discretion in denying Mesia's motion for a mistrial. We further conclude that any error in the curative instruction addressing the court's improper comment did not prejudice Mesia. We also have determined the jury instructions did not misstate the State's

burden of proof and Mesia's other claims of error in the jury instructions were harmless. Moreover, the evidence was sufficient to sustain Mesia's conviction for assault. Accordingly, we affirm Mesia's convictions.

———————