**2015 UT App 234**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SEMISI HUFANGALUPE MAAMA,
Defendant and Appellant.

Opinion
No. 20130813-CA
Filed September 11, 2015

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 121904203

Richard G. Uday, Attorney for Appellant

Sean D. Reyes and Ryan D. Tenney, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and KATE A. TOOMEY
concurred.

VOROS, Judge:

¶1      Appellant Semisi Hufangalupe Maama, among others,
robbed a victim in the parking lot of a Salt Lake City fast-food
restaurant. The victim disarmed the robbers, but before fleeing,
the robbers assaulted the victim and reclaimed their gun. The
incident resulted in three convictions and three appeals,
including this one.[1] Maama appeals his convictions for
aggravated robbery, riot, and misdemeanor assault. He

---

1. The others are *State v. Maama*, 2015 UT App 235, and *State v. Pham*, 2015 UT App 233, also issued today.

challenges a jury instruction on coercion and the trial judge's alleged lack of neutrality. We affirm.

BACKGROUND[2]

¶2      Maama was convicted of aggravated robbery, a first degree felony; riot, a third degree felony; and assault, a class B misdemeanor. All the charges arose from a parking-lot robbery.

¶3      On March 30, 2012, Maama, his sister Mesia, her boyfriend Pham, and another friend stopped at a fast-food restaurant. While Mesia and her friend went inside, Maama and Pham stayed outside in the parking lot drinking alcohol and dancing.

¶4      At about the same time, a family of three pulled into a parking spot two stalls away. The mother went inside to order food while the father and their eleven-year-old son waited in the SUV. While waiting, the father noticed Maama and Pham and observed that "[i]t looked like they had been partying." Maama had a bottle of whiskey in his hand. The father had become distracted by a portable video game that he and his son were sharing, but his son saw Maama and Pham approach the SUV.

¶5      Pham suddenly opened the father's door, pointed a gun at the father, and demanded money. Maama was "[r]ight next to [Pham]," "standing right side by side." The father told Pham to "stay calm" and promised to give Pham "whatever you want."

---

2. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116. "We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346.

But as he looked for his wallet, he remembered that the mother had taken it into the restaurant to buy food. As the father stalled for time, Pham "pistol whipped" him in the head. Maama remained "standing next to [Pham] the whole time." The father turned to Maama and said, "[C]ome on dude . . . you're going to do this to me?" . . . I got my son with me." Maama responded, "Give him the fucking money." Maama "emphasized the F word." The father interpreted Maama's command "as like I'm screwed. Either they are going to get some money or . . . I'm going to get shot, I'm going to get killed right here in front of my son."

¶6      The boy "pleaded to [Maama and Pham], like what are you guys doing?" The boy cried and said, "I got some money right here." The son then handed over his allowance money to Pham, $11 or $12. The father became "pissed off" that his son was parting with his allowance money, and when Pham took the money, the father grabbed the gun and "ripped it out of [Pham's] hand." The father then exited the SUV and "just started swinging, just kind of going crazy." The father punched Maama, who fell straight to the ground. The father and Pham then "just started going at it," but Pham soon disengaged, bleeding from his mouth.

¶7      At that time, Mesia came out of the restaurant, got into her friend's car, and pulled up behind the SUV. She shouted, "Let's go, let's get out of here," and Maama and Pham got into the car. The son ran into the restaurant and told his mother, "They're fighting. They're fighting. There's a gun, mom. They have a gun." By the time the mother had reached the SUV, the father had the gun and had taken control of the situation.

¶8      Rather than driving away, Mesia decided to take the situation "into [her] own hands" and retake the gun from the father before leaving. She got out of her friend's car, approached the mother, and asked the mother to get the gun from the father,

promising to leave if the mother returned the gun. The mother and father each refused, and when the father looked back toward Maama and Pham, Mesia punched the father. Maama and Pham then approached and began attacking the father. Mesia got control of the gun, and with Maama and Pham got back into the car and drove away.

## ISSUES ON APPEAL

¶9    First, Maama contends that the trial court erred by inadequately instructing the jury on the State's burden to disprove compulsion beyond a reasonable doubt.

¶10    Second, Maama contends that the trial court abused its discretion by issuing a curative instruction admonishing the jury to disregard the court's facial expressions during trial, rather than ordering a mistrial sua sponte.

¶11    Finally, Maama contends that the trial court abused its discretion by issuing a curative instruction admonishing the jury to disregard the court's interjection correcting Father's testimony on cross-examination, rather than ordering a mistrial.

## ANALYSIS

### I. Jury Instruction Claim

¶12    Maama first contends that "the trial court erred by failing to properly instruct the jury on the affirmative defense of compulsion." Specifically, Maama argues that "[a]lthough the trial judge allowed a compulsion jury instruction" (Instruction 61) on the aggravated robbery charge, the "instructions given failed to instruct the jury about the burden the affirmative instruction placed on the prosecution." The State responds that Maama "was not entitled to a compulsion instruction at all" and

that, in any event, "the instruction was sufficient." "Generally, we review a trial court's ruling on a jury instruction for correctness." *State v. Benson*, 2014 UT App 92, ¶ 8, 325 P.3d 855 (citing *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892).

¶13   "A [d]efendant is entitled to have the jury instructed on [the defense's] theory of the [case] if there is any basis in the evidence to support that theory." *State v. Berriel*, 2013 UT 19, ¶ 12, 299 P.3d 1133 (alterations in original) (citation and internal quotation marks omitted).

¶14   Here, we see no basis in the evidence at trial to support a compulsion instruction. Utah Code section 76-2-302(1) governs the circumstances in which the compulsion defense applies:

> A person is not guilty of an offense when he engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would not have resisted.

Utah Code. Ann. § 76-2-302(1) (LexisNexis 2012). Utah law requires that "the use or threatened imminent use of unlawful physical force upon [the defendant] or a third person," *id.*, constitute a specific threat, *see State v. Tuttle*, 730 P.2d 630, 634 (Utah 1986), one where the defendant "had no reasonable alternative to the commission of the crime charged." *Id.* at 635. Thus, "if there was a reasonable, legal alternative to violating the law," a compulsion defense "fail[s]." *Id.* (citation and internal quotation marks omitted).

¶15   Maama argues that after he accidentally stumbled upon Pham's robbery attempt, Maama decided to "urge [the father] to cooperate" because Maama believed it was "the only way to prevent anyone from getting hurt." Maama claims that he was

simply "in the wrong place at the wrong time," that he "walked upon the robbery" with mere "seconds to react," and that he "felt compelled to de-escalate the incident by suggesting [the father] cooperate with the robbery demands of Mr. Pham." But Maama identifies no threat, specific or otherwise, that could bring his conduct within the compulsion-defense requirements. Instead, Maama testified that when he realized that Pham was robbing the father and son, Maama thought that the father "was going to get hurt" if the father did not comply. Maama testified that "for [the father's] safety, for . . . even my safety also," Maama told the father, "[J]ust hand it to him, just listen to him, man." Maama might have concluded that the best way for the father to avoid harm was to capitulate, but Maama does not claim that he, or anyone else, was the target of a specific threat forcing him to participate in the robbery. Accordingly, Maama was not entitled to a compulsion defense in the first instance.

¶16    In any event, Instruction 61 adequately conveyed the State's burden of disproving compulsion beyond a reasonable doubt. Jury instructions require no particular form so long as they accurately convey the law. *See State v. Marchet*, 2009 UT App 262, ¶ 23, 219 P.3d 75. "To determine if jury instructions correctly state the law, we 'look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case.'" *State v. Painter*, 2014 UT App 272, ¶ 6, 339 P.3d 107 (quoting *Maestas*, 2012 UT 46, ¶ 148) (citation and internal quotation marks omitted)). "We generally presume that a jury will follow the instructions given it." *State v. Menzies*, 889 P.2d 393, 401 (Utah 1994).

¶17    Under Utah law, "[i]t is fundamental that the State carries the burden of proving beyond a reasonable doubt each element of an offense, including the absence of an affirmative defense once the defense is put into issue." *State v. Low*, 2008 UT 58, ¶ 45, 192 P.3d 867 (citation and internal quotation marks omitted); *see*

*also* Utah Code Ann. § 76-1-502(2)(b) (LexisNexis 2012) (requiring the State to negate an affirmative defense "by proof" if the defendant has introduced evidence of the defense).

¶18    Here, Instruction 61 adequately conveyed the State's burden. Maama's requested instruction highlighted the State's burden to disprove compulsion beyond a reasonable doubt:

> Before you can convict . . . Maama . . . of any crime, you must first be convinced beyond a reasonable doubt that he . . . was NOT acting because of compulsion. If the prosecution fails to convince you beyond a reasonable doubt that . . . [Maama] was NOT acting because of compulsion, . . . then you must find him . . . not guilty of all criminal charges.

Instruction 61 likewise emphasized the State's burden to disprove compulsion beyond a reasonable doubt:

> Once the issue of compulsion is raised, . . . the prosecution has the burden to prove beyond a reasonable doubt that the act was not done because of compulsion. The defendant has no . . . burden of proof but is entitled to be found not guilty if there is any basis in the evidence . . . sufficient to create a reasonable doubt as to whether he . . . acted because of compulsion.

Instruction 61 unambiguously instructed the jury that the State had the burden to disprove compulsion beyond a reasonable doubt. Because jury instructions require no particular form so long as they adequately convey the law, *see Marchet*, 2009 UT App, ¶ 23, we cannot conclude that the trial court erred in issuing Instruction 61 to the jury. Accordingly, Maama's jury-instruction claim fails.

## II. Mistrial Claim

### A.    Improper Demeanor Incident

¶19    Maama next contends that "the trial court erred in failing to grant a mistrial in connection [with] the improper demeanor of the trial court judge while evidence was being taken, which deprived . . . Maama of a fair trial." Specifically, Maama challenges the judge's "facial expressions and rolling of eyes" during the presentation of his defense. The State responds that Maama did not preserve this claim and that, in any event, he "has not shown that he was prejudiced by the alleged error."

¶20    "[T]o preserve an issue for appeal, the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (brackets, citation, and internal quotation marks omitted). When a party fails to preserve an issue for appeal, we generally will not review that issue unless the party argues an exception to the preservation rule on appeal. *See State v. Hansen*, 2002 UT 114, ¶ 21, 61 P.3d 1062; *id.* ¶ 21 n.2 (identifying plain error, exceptional circumstances, and ineffective assistance of counsel as exceptions to the preservation rule).

¶21    On the second day of trial, Mesia's counsel asked for a judicial-neutrality instruction that included language about facial expressions. Mesia's counsel then said something that was inaudible to the transcriber but which prompted the trial court to respond, "No, I am not. I spent my whole time [inaudible]." Mesia's counsel responded, "[Inaudible] you roll your eyes." The trial court said, "Oh, stop. [Inaudible] I rolled my eyes equally for the Defense and Prosecution, because everybody's witnesses had a few eye-rolling moments. All right, I will watch it."

¶22    No party requested a mistrial on the basis of the trial court's "facial expressions and rolling of eyes." On the third day

of trial, Mesia's counsel moved for a mistrial, a motion Maama later joined. But the parties based this motion on the trial court's intervention during the father's cross-examination, not on the trial court's "facial expressions and rolling of eyes." No party at any point moved for a mistrial based on the trial court's facial expressions. A party who "makes an objection at trial based on one ground . . . does not preserve for appeal any alternative grounds for objection." *State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867. Because Maama did not present the facial-expression issue "to the trial court in such a way that the trial court ha[d] an opportunity to rule on that issue," *438 Main St.*, 2004 UT 72, ¶ 51 (citation and internal quotation marks omitted), he has not preserved the claim for appeal. And Maama argues no exception to the preservation rule on appeal. Accordingly, we decline to consider the argument.

B.     Witness Correction Interjection

¶23     Finally, Maama appears to challenge as reversible error the trial court's sua sponte interjection to correct the father's rebuttal testimony on cross-examination and denial of a motion for mistrial on that basis. Maama contends that the trial court "injected itself in a biased and prejudicial manner . . . directly into the testimony of [the father] correcting [the father] in a manner which assisted the [prosecution]."

¶24     "A trial court's denial of a motion for mistrial will not be reversed absent an abuse of discretion." *State v. Widdison*, 2001 UT 60, ¶ 54, 28 P.3d 1278. "[W]e will not find an abuse of discretion unless a review of the record shows that the court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have a fair trial." *Id.* (citation and internal quotation marks omitted).

¶25     On the third day of trial, Mesia's counsel recalled the father as a rebuttal witness. Mesia's counsel cross-examined the father about what he said on the first day of trial by referring to

counsel's own notes about what the father had said. The trial court interjected to correct what it apparently felt was an inaccurate statement from Mesia's counsel about the father's earlier testimony. Mesia's counsel objected to the trial court's interjection.

¶26   After the trial court excused the jury, Mesia's counsel moved for a mistrial based on the trial court's interjection. Maama's counsel later joined the motion:

> I was just going to simply say, I join that motion or in the alternative would ask for a curative instruction that [the jurors] are to rely [solely] on their memories and no input from any of the attorneys or [inaudible]."

The trial court denied the motion for mistrial but issued the requested curative instruction, admonishing the jury to disregard the interjection:

> As you heard earlier today, we had our little discussion about notes and this is why you shouldn't rely too heavily on notes because I'm not so confident that anybody is right or wrong. Luckily in this situation you have the witness on the stand who clarified himself and it's up to you to remember his testimony the way you remember it and never be overconfident in your notes. Okay.

Maama did not object to the wording of the curative instruction in the trial court, nor does he challenge it on appeal.

¶27   The trial court does not abuse its discretion where a party asks for relief in the alternative and the trial court grants one of the alternatives, unless the party suffers "unacceptable prejudice." *See State v. Menzies*, 889 P.2d 393, 401 (Utah 1994); *see also State v. Murdock*, 2011 UT App 71, ¶ 5, 253 P.3d 80. Here,

Maama moved for a mistrial or, in the alternative, a curative instruction. The trial court issued a curative instruction. Maama neither challenges the curative instruction nor claims that the curative instruction failed to do its job of curing any prejudice occasioned by the court's actions. Because Maama received the relief he requested, albeit in the alternative, we cannot conclude that the trial court abused its discretion in declining to grant his motion for a mistrial. Accordingly, Maama's claim fails.

CONCLUSION

¶28    We conclude that Maama has failed to carry the burden of persuasion on the claims he has raised on appeal. We therefore affirm his convictions.

_____